*Fairfield,*
June, 1852.

Johnson
*v.*
Smith.

JOHNSON *against* SMITH and others.

A note signed by the authorized agents of a corporation, with words annexed to their names intimating their agency, is the note of the corporation, and not of the persons signing it.

Therefore, where *P*, an ecclesiastical society, passed votes, empowering the wardens and vestry to transact all its necessary business, as a committee, and then directed that committee to raise 500 dollars for the builder of the new church; at this time, there were, in such society, two wardens and four vestry-men; three of the vestry-men borrowed of the plaintiff a part of the 500 dollars, for which they gave him their promissory note, signed by them, with this addition, "vestry-men of *P* church;" the money so borrowed was applied to the use of the society, and the interest thereon was annually paid by its treasurer, and charged to and allowed by the society; in an action on such note, it was held, that this instrument was the note of the society, and not of the individuals who signed it; consequently, such individuals were not liable.

Though a person duly authorized as agent, and acting as such, may bind himself personally; yet this must be done, by language clearly expressive of such an intent.

So also, a person signing as agent, may bind himself, if he had no authority to bind, and has not bound, his principal.

In case of a defective power to bind the principal, if the agent speaks only in the language of the principal, and does not use apt language to bind himself, he will not be liable on the contract, but may be subjected for a false assumption of authority.

Where a power of a mere private nature is conferred on two or more persons, all must concur in the act, and if of a public or more general nature, a majority, at least, must act, in order to bind the body conferring the power; yet if such body make no objection to the act done, but adopt and sanction it, a third person cannot avail himself of a defective execution; a subsequent ratification having the same effect as an original authority.

THIS was an action on two promissory notes, one for 54 dollars, 50 cents, dated the 20th of *June*, 1838, and the other for 230 dollars, dated the 11th of *July*, 1838. The defendants pleaded the general issue; on which the cause was tried, at *Fairfield, February* term, 1852.

On the trial, the making of the notes declared on, at the times they respectively bear date, was admitted. It also appeared, that to the signatures of the defendants were annexed the words, "Vestry-men of the *Episcopal Society.*"

The defendants gave in evidence a writ of *scire-facias* in favour of *David Burr* and others against *St. Paul's Church*, with the proceedings had thereon.

The defendants also offered evidence to prove, and the

court found, that there was, and for a long time before the notes in question were executed, had been an *Episcopal* society in the town of *Brookfield,* which was a corporate body, duly incorporated, by the name of *St. Paul's Church.*

That on and before the 16th day of *April,* 1838, said society had elected, and there were then, four vestry-men and two wardens, according to the usage of the protestant *Episcopal church* in the *United States.*

That on said 16th day of *April,* 1838, said society passed the following vote, authorizing the wardens and vestry, to raise money, for the use of said society, and to act as a committee for said society, *viz.*    " At a meeting of the members of the *Episcopal society,* held at *St. Paul's Church, Brookfield, April* 16th, 1838, the following votes were passed :

" *Voted,* that the wardens and vestry be empowered to transact all necessary business for the society, as a committee.

*Voted,* that the committee be directed to raise 500 dollars for Mr. *Osborne,* the builder of the new church."

That the defendants, by virtue of said vote of said society of *St. Paul's Church,* borrowed of the plaintiff, the several sums of money specified in said notes, for the use and benefit of said society, to enable them to build a church edifice for said society ; at which time, the plaintiff was a member of said society, and knew the purpose and object of the defendants in borrowing said several sums of money.

That the latter part of the year 1839, said notes were duly, and for full and valuable consideration, sold and assigned, by the plaintiff, to *Edwin A. Lacy,* the absconding debtor, named in said *scire-facias.*

That said *Lacy* was the holder of said notes from the time when they were assigned to him, until after and when the aforesaid suit in favour of said *David Burr et al.,* against him, the said *Lacy,* was commenced, and by which said *Episcopal* society of *St. Paul's Church* was served with notice to appear and disclose, as in said writ of *scire-facias* is averred, and when said process or notice was thus served upon said society.

That while said *Lacy* was the holder and assignee of said notes, the interest upon them was annually paid upon them

to said *Lacy*, by the treasurer of said society of *St. Paul's Church*, from the funds of said society, and was, by said treasurer, annually charged to said society; and said payments, thus made and charged, were annually submitted to said society, by said treasurer, and annually approved, by the votes of said society; and that the defendants never paid, nor were, at any time, required to pay, the interest or principal of said notes, nor any part thereof.

That the money so borrowed or raised by the defendants of the plaintiff, was part of the said sum of 500 dollars, which said wardens and vestry-men of said society were, by said vote of said society, authorized and empowered to raise, as aforesaid, and was duly applied to the building of a church edifice for said society.

To all the evidence thus offered by the defendants, and received by the court, the plaintiff objected.

Upon these facts, the case was reserved for the opinion and advice of this court, as to what judgment should be rendered thereon.

*Dutton* and *Bristol*, for the plaintiff, in support of the general proposition, that the defendants were liable personally, on these notes, contended, 1. That where a power is conferred upon two or more, for a *public purpose*, the power is joint and several, and a *majority* of the persons authorized may do the act; but where the power is granted for a *private purpose*, the act done by the agents, is not binding upon the principal, unless all concur in doing the act; for the authority is construed strictly, and the power is understood to be joint and not several. *The King* v. *Beeston*, 3 *Term R.* 592. *Withnell* v. *Gartham*, 6 *Term R.* 388. 398. *Patterson* v. *Leavitt*, 4 *Conn. R.* 50. *Bull* v. *Bull*, 3 *Day*, 384. Inhabitants of *Sutton* v. *Cole*, 3 *Pick.* 232. *Damon* v. *Granby*, 2 *Pick.* 345. *Green* v. *Miller*, 6 *Johns. R.* 39. *Story* on Agency, § 42. A note signed by one of the select-men, is not the note of the town. *Andover* v. *Grafton*, 7 *N. Hamp.* 598. If a power be given to two or more persons to give or receive livery, both must concur in the act, or the livery is void. *Co. Litt.* 49. *Com. Dig. tit.* Attorney, C. 11.

2. That in this case, the power is given for a *private pur-*

Fairfield,
June, 1852.

Johnson
*v.*
Smith.

pose.    Such an ecclesiastical society is a *private corporation.* *Jewett* v. *Thames Bank,* 16 *Conn. R.* 516.    1 *Greenl. Ev.* § 331, 332.    *Angell & Ames* on *Corp.* 16.    But the power, although granted in this case, for a *private purpose,* was not executed even by a majority of the wardens and vestry. The execution of it, therefore, by *less* than a majority, was clearly bad, upon every principle.

3. That if the defendants have executed the notes in question, without an authority from the society, then they are personally responsible, the words of the notes being apt to charge themselves.    *Smout* v. *Illberry,* 10 *Mess. & W.* 9. *Sumner* v. *Williams,* 8 *Mass. R.* 178.    *Dusenbury* v. *Ellis,* 3 *Johns. Ca.* 70. *Meech* v. *Smith,* 7 *Wend.* 315.

4. That if these defendants had an authority from the society to execute the notes, that authority has not been executed *in such a manner,* as to bind the society, but only the defendants personally.    The words are " we promise ;" the addition " vestry-men of the *Episcopal* society," are merely *descriptio personarum.*    *Packard* v. *Nye,* 2 *Metc.* 47.    *Bradlee* v. *Boston Glass Co.,* 16 *Pick.* 34.    *Simons* v. *Heard,* 23 *Pick.* 121.    *Nimrod* v. *Mead,* 7 *Wend.* 68· *Barker* v. *Mechanics' Ins. Co.,* 3 *Wend.* 94.    *Moss* v. *Livingston,* 4 *Comst.* 208.    *Hills* v. *Bannister,* 8 *Cowen,* 31. *Downham* v. *Jones,* 9 *Jurist,* 454–458.    *Leadbitter* v. *Farrow,* 5 *Maule & S.* 345.    *Burwell* v. *Jones,* 3 *B. & Ald.* 47. (5 *E. C. L.* 223.)

The personal liability of the party, in cases like the present, does not depend on the question whether he *was in fact* an agent, nor whether that fact was *known* to the party with whom the contract was made, but upon the *terms* of the written instrument.    See *Simonds* v. *Heard,* 23 *Pick.* 121, 126., and most of the authorities above cited.

5. That parol evidence is inadmissible to show, that the contract was the contract of the principal, and not of the agent, when the agent, upon the face of the contract, binds himself.    See again, *Simonds* v. *Heard,* 23 *Pick.* 125. *Stackpole* v. *Arnold,* 11 *Mass. R.* 27.

6. That where the credit is given to the agent, or a promissory note of one known to be an agent, is taken, the principal is not liable, either for the debt or on the note.    *Beebe* v. *Robert,* 12 *Wend.* 413–417.    *Paterson* v. *Gandasequi,* 15

Fairfield,
June, 1852.

Johnson
v.
Smith.

*East*, 62.    *French* v. *Price*, 24 *Pick*. 13.    *Green* v. *Turner*, 8 *Metc*. 411.

7. That the process by foreign attachment, in this case, against the *Episcopal* society, does not affect the plaintiff's right to recover on the notes in suit.

*Hawley*, for the defendants, contended, 1. That the notes bound the society; the power to raise money authorizing the raising of it, in the ordinary manner, as it was raised here.

There was no necessity for the concurrence of *all*, nor even of a *majority* of the committee in giving the notes. The specific thing to be done was authorized and directed. It was a mere *ministerial* act; there was no judgment nor discretion to be exercised, as to whether *it should be done or not*, nor otherwise, in relation to it. It was an act that could as well and as effectually, for all the purposes of the society, be done by *one* as by *many*. In ascertaining the *nature of a power*, we look at the *intent* of the person who confers it; and in ascertaining that intent, regard the *character* and *nature* of the *act to be done*. A power to *seven*, or *any of them*, would undoubtedly authorize *three* to do the act. And here, the *nature* of the *act to be done*, the *character* of the *committee*, and the *nature of their office*, shew, *that such was the power* conferred by the vote. The power of officers of a *municipal* corporation is *joint and several*; and where no judgment or discretion is to be exercised, any *one* may act. *A* purchases *Black-Acre* of *B*, for 1,000 dollars. He is to pay the money at a given *time* and *place*, and then receive the deed and place it on record. He empowers *three* to do these acts for him; *one* only of the *three*, at the time and place, pays the money, takes the deed, and puts it on record. Is not the *payment effectually made*, and a *title acquired* by the deed?

2. That the note is, in *form*, sufficient to bind the society. *Hovey* v. *Magill*, 2 *Conn. R.* 282.    *Magill* v. *Hinsdale*, 6 *Conn. R.* 465. The addition of "*vestry-men*," &c., imports that they act in behalf, not of themselves, but of the society. And the *place of the date* of the note, and the fact that there is an *Episcopal* society in *Brookfield*, (and only one,) shews, that that society was intended. Besides, the parol testimony puts all doubt, on this point, at rest.

3. That the parol testimony was admissible. It was not offered to *vary* any *stipulation* of the note, but to prove a *fact*—the fact of the plaintiff's knowledge of the *character* in which the defendants acted. The plaintiff having that knowledge, cannot look to the defendants for payment. And even if the *form of the contract* were such, that *without such knowledge,* the agents *might* be bound, yet on showing such knowledge, they are not bound ; especially, if the *form* of the contract be such that the principal may *be bound, consistently* with its tenor. *Hovey* v. *Magill,* 2 *Conn. R.* 680. *Wilson* v. *Hart,* 7 *Taun.* 295. *Garrett* & al. v. *Handley,* 4 *B. & Cres.* 664. (10 *E. C. L.* 438.) *Bateman* v. *Phillips,* 15 *East,* 272. *Angell* on *Corp.* 283. & seq. *Mott* v. *Hicks,* 1 *Cowen,* 513. 532, 3, 4, 5, 6.

4. That the process of foreign attachment, shown in this case, furnishes no defence to the *Episcopal* society, in the present suit.

Church, Ch. J. It is obvious, that only one debt became due to this plaintiff, by reason of his loan of money, as set forth in this record. This being true, the only question is, who owes it—the society, the corporation of *St. Paul's Church,* or these defendants ? We answer, the former.

The money was raised, by direction of the society, for its sole use ; it has received and used it, and, by its treasurer, has, from the beginning, annually paid the interest upon it, to this plaintiff and *Lacy* his assignee, the holders of these notes, who have recognized the society, and no one else, as their debtors. Nor has claim been made upon these defendants, until since the process of garnishment has been served upon *St. Paul's Parish,* for the debt of *Lacy.* The society received the money directly from the plaintiff, through the avowed and recognized agency of these defendants as its officers ; they were not middle men, borrowing from the plaintiff, and lending to the society.

We do not think that these defendants were ever liable upon these notes : they are the notes of the society.

The defendants signed the notes as vestrymen of the *Episcopal* society, which society the superior court has found was identical with the society of *St. Paul's Church,* and not for themselves. The word " *vestry-men,*" *ex vi termini,* imports

agency, and is of the same significancy as the word agents, committee, &c. And the defendants were in fact vestry-men of said society, and, with others, specially constituted a committee, and empowered to raise these funds.

That a note thus signed, by authorized agents of a corporation, is the note of the corporation, and not of the agents executing it, was very deliberately decided, by the courts of this state, long ago, in the cases of *Shelton* v. *Darling*, 2 *Conn. R.* 435. and *Hovey* v. *Magill, Id.* 680 ; and the same principle, recognized and settled in those cases, has been followed here ever since. *Magill* v. *Hinsdale*, 6 *Conn. R.* 465. *Ferris* v. *The Stamford Bank*, 17 *Conn. R.* 259.

Judge *Swift*, in expressing the opinion of the court, in the case of *Hovey* v. *Magill*, says : " It will be agreed that no precise form of words is required to be used in the signature ; that every word must have an effect, if possible ; and that the intention must be collected from the whole instrument, taken together :" and again : " I can see no good reason for the addition of *agent*, but to render the note obligatory on the company, and exclude all idea of individual liability. This is the plain language of the transaction, and we ought to give it the obvious meaning, and not entrap men, by the mere form of words."

We need not look abroad for a doctrine more *common sense like*, or more consistent with obvious intention, on this subject, than is expressed by the court, in the case referred to, if indeed a different doctrine has been intentionally recognized elsewhere. And unless we are disposed to yield to the authority of technicality, in opposition to good sense and substantial equity, we shall adhere to what we suppose is the authority of our own law on this subject.

No one, as we think, can doubt, when reading this note, that the purpose of the defendants was, to give a society note, and that the plaintiff supposed he was receiving such a one, and was giving exclusive credit to the society, for money loaned to it ; he was a member of the society himself ; and whether the defendants, or either of them, were persons to whom he would give credit personally, we do not know.

There is some apparent confusion in the decided cases, out of this state, on this subject ; but we are satisfied, upon

*Fairfield,*
June, 1852.

Johnson
*v.*
Smith.

a view of them all, that the doctrine of our law is the doctrine of most of them. *Story* on *Agency*, § 154. 155. 263. *Angell & Ames* on *Corporations*, 170. 2 *Kent's Com.* in loc. *Rathbon* v. *Budlong*, 15 *Johns. R.* 1.

This confusion has arisen, perhaps, in some measure, from not always distinguishing between the execution by agents of sealed instruments, as deeds of conveyance, covenants, &c., in which greater precision of form has been required, and simple and mercantile contracts ; and also between cases of corporations and mere voluntary associations, acting by agents. *Story* on *Agency*, § 154.

That an agent may bind himself personally, even when acting really or professedly as agent, is not denied ; and in the execution of a simple contract, as well as a specialty ; and this will be so, in all cases, where, by language clearly expressive of such an intent, he has substituted his own responsibility for that of his principal. So also, if in language of personal obligation in the body of the contract, although he may sign as agent, he will bind himself, if he had no authority to bind, and has not bound, his principal, by his act ; as the plaintiff hereafter insists, in the present case. But in case of a defective power to bind the principal, if the agent speaks only in the language of the principal, and does not use apt language to bind himself, he will not be liable on the contract thus made, but collaterally only, for a false assumption of authority to act for another. *Jones* v. *Downman*, 4 *Adol. & Ell. N. S.* 234. n. (45 *E. C. L.* 234.) But in the present case, the form of the notes and the circumstances under which they were executed, show no intent, on the part of the defendants, to assume an individual obligation.

The strong ground of claim, by the plaintiff, here, is, that if, by the form of the notes and manner of execution, the defendants were not made personally responsible, they became so, because by the manner in which their agency was executed, they imposed no obligation upon the corporation to pay them. This claim is predicated upon the fact, that the society, by its vote, appointed its wardens and vestry, consisting of six persons, to raise the money for which these notes were given, and the notes were signed only by three of them.

We admit the principle, that, where a power of mere private confidence is entrusted to a number of persons, all must concur; and if of a public or more general nature, a majority, at least, must act, in order to bind the body conferring the power. And although, in the present case, a majority of the wardens and vestry did not sign this note, yet who is it that objects? Not the corporation, which alone is affected by the act, but a third person. The society, whose officers *de facto* the defendants were, has never objected to or repudiated their act, and never can. If the signing of these notes was not its act originally, it has adopted and sanctioned it, so as to be itself estopped. It could not, as we think, ever have objected to the original act of signing or executing those notes. The defendants were their officers and agents, and authorized to do just what they have done; and the avails of their agency were for the immediate benefit of the society, and for which they were then legally liable. All was right, except that one or more of the committee, neglected to join in the act of executing the notes.

But if a subsequent ratification was necessary to create a binding obligation upon the society, it has been most effectually done, by receiving and using the money, and by an annual payment of the interest upon these notes, and entering them upon its book, as its own debts. "A ratification," says Judge *Story*, "when fairly made, will have the same effect as an original authority, to bind the principal, not only in regard to the agent himself, but in regard to third persons." In short, it is treated throughout as if the act were originally authorized, for the ratification relates back to the time of the inception of the transaction, and has a complete retroactive efficacy: *Omnis ratihabitio retrotrahitur.* *Story* on *Agency,* § 244. *Broom's Maxims,* 381. *Addison* on *Contracts,* 397.

And so it has been holden, if a person, without previous authority, sign a *memorandum* required to be in writing by the statute of frauds, a subsequent adoption or assent, by the principal, will take the case out of the statute, as effectually as if the agent had authority at the time of signing. *McLean* v. *Dunn,* 4 *Bing.* 722. (15 *E. C. L.* 129.) The case of *Saunderson* v. *Griffiths,* 5 *B. & Cres.* 909. (12 *E. C. L.*

*Fairfield,*
*June, 1852.*

Johnson
*v.*
Smith.

404.) on the first reading, might appear to be an exception to the almost universal doctrine of the law on this subject; but it involved really only a question of variance, and a nice discrimination in a matter of pleading. And some other cases are to be found forming apparent exceptions, in which the discrimination "is one of considerable nicety, and stands upon reasoning not very satisfactory or clear." *Story* on *Agency*, § 246. and notes.

It will be recollected, that the vote of the society authorizing the wardens and vestry to act, was not imperative as to the time or manner of their action : it was only that "they be directed to raise 500 dollars for Mr. *Osborne*, the builder of the new church," leaving the manner of doing this entirely at the discretion of that board. There was no direction that the committee or board should execute any bond, note or other specific form of security, or if given, that it should be executed under the hands of the whole, or a part of the committee. That board was to devise the means, and direct as to the manner of raising the specified funds ; and if, by its direction or approval, these defendants alone signed the notes for the money for which a majority had negotiated, why would not this be a reasonable and legal execution of the power conferred by the society ? Such a mode of proceeding, we believe, is not uncommon. One or more select-men of a town, less than a majority, often execute the powers conferred by the law or the towns upon the board of select-men, and especially, when no objection is interposed, by the other select-men or the town ; and this upon the presumption of an assent, by the whole, or a majority of the select-men. May we not fairly presume such to have been true, in the present case, as to the mere manner of executing the notes in question?

These suggestions are made in view of the doctrines recognized by the supreme court of the *United States*, in the case of *Fleckner* v. *Bank of United States,* 8 *Wheat.* 338. The plaintiff in that case claimed title to the note in suit, by virtue of an indorsement of it, by the cashier of the *Planters' Bank.* The defendant insisted, that the cashier had no authority to make the transfer. The facts were, that the board of directors of the *Planters' Bank,* on the 21st day of *October,* 1819, passed a resolution, " that the

president and cashier be authorized to adopt the most effectual measures to liquidate, the soonest possible, the balance due to the office of discount and deposite in the city of *New-Orleans,*" &c.   To effect this object, the cashier indorsed the note in question ; and on the 27th day of *June,* 1820, the directors of the *Planters' Bank* ratified this act of the cashier.   The objection was made by the defendant, on the ground that the cashier alone had acted, without the president of the bank.   On this point, the court says : " The resolution was merely directory to the president and cashier, and leaves them to decide as to the time, the mode and the means.   They might, therefore, agree, that the cashier should indorse the note in question, &c.   The presumption that this was an exercise of authority, sanctioned by the president, as well as contemplated by the directors, is almost irresistibly proved, by the fact that the *Planters' Bank* has never complained, but has ratified and approved the whole transaction."   The court goes on to say, that the resolution of *June* 27th, 1820, was conclusive and binding on the bank ; and if so, it was binding upon all other persons who have not an adverse interest.   No maxim, say the court, is better settled in reason and law, than the maxim, *Omnis ratihabitio retrotrahitur ;* at all events, where it does not prejudice the rights of strangers.   *P.* 363.   We believe that the reasonable doctrines of this case, in this respect, are quite applicable to the case before us.   And if so, as well as upon the other views expressed by us, a majority of us are of opinion, that this action against these defendants, cannot be sustained.

We have not thought it to be necessary, therefore, to consider any questions which may be supposed to arise from the garnishee process, set out in this record.

In this opinion the other judges concurred, except HINMAN, J., who dissented.

                              **Judgment for defendants.**