[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff, a construction contractor, sued Daniel DiLeo ("DiLeo") d/b/a Connecticut Modular Homes and Strattan Homes, Inc. ("Strattan"). In a four count revised complaint dated May 30, 1989, plaintiff made the following claims.
FIRST COUNT (vs. STRATTAN)
DiLeo, as Strattan's authorized agent, entered into a contract with plaintiff to deliver a modular, duplex style home for a price of $63,120.00. At delivery, Strattan insisted on and received $78,530.02 in breach of the contract. In addition, the modular home was defective in several respects.
SECOND COUNT (vs. DiLEO)
DiLeo breached its agreement with plaintiff to deliver the home for a price of $63,120.00 and instead demanded $78,530.02 in breach of the contract.
THIRD COUNT (vs. STRATTAN) CT Page 10856
Plaintiff claims that Strattan's failure to deliver the home at the contract price was an unfair trade practice in violation of Connecticut General Statutes 42-110 (b) ("CUTPA").
FOURTH COUNT (vs. DiLEO)
Plaintiff claims that DiLeo committed an unfair trade practice by failing to deliver the home at the contract price of $63,123.00 and demanding $78,530.02 from plaintiff on delivery, all in violation of CUTPA.
PROCEDURAL HISTORY
The court must first address the rather unusual procedural posture of the case.
Defendant DiLeo failed to appear for the scheduled trial and was defaulted. The case proceeded as a hearing in damages against him pursuant to Connecticut Practice Book 364(a). Plaintiff never alleged that he contracted with DiLeo personally. He claimed that DiLeo was the authorized agent of Strattan in the only contract pleaded. It is fundamental that an authorized agent who contracts within the scope of his authority is not personally liable. Behlman v. Universal Travel Agency, Inc.,. Conn. App. 688 (1985).
After the hearing, plaintiff requested only breach of contract damages against DiLeo. The court, therefore, considers the CUTPA claim abandoned. The evidence failed to establish that DiLeo was an authorized agent of Strattan; therefore, he contracted in his personal capacity. Johnson v. Smith, 21 Conn. 627
(1852). The court treats the request for contract damages as a request to amend the complaint to conform to the proof. The court grants the request and affirms the previously entered judgment against DiLeo in the amount of $22,888.55.
Plaintiff's revised complaint does not allege a direct contract with Strattan. Without objection, plaintiff introduced a contract that he made directly with Strattan after DiLeo anticipatorily breached the contract alleged in the complaint. (Plaintiff's exhibit I.) Plaintiff and Strattan argued, briefed and generally treated the case as one involving a dispute between them over the contract in evidence as plaintiff's exhibit I. The court will, therefore, treat the actions of the parties as an agreed amendment to the complaint alleging such a contract and a breach thereof.
FACTUAL FINDINGS CT Page 10857
Based on the evidence, the court makes the following findings:
1. Plaintiff entered a contract with DiLeo for the construction and delivery of a modular duplex home ("home").
2. DiLeo was not the agent, servant, employee or authorized representative of Strattan. Plaintiff testified that DiLeo said he was Strattan's agent; however, an alleged agent's claim that he is such an agent, without more, is insufficient to establish agency. Bailey v. Bobecki, 117 Conn. 653 (1933); Milne v. MacWhirter, 128 Conn. 683
(1942). The only other evidence plaintiff offered was that "Al" and "Chris" said DiLeo was Strattan's Connecticut agent and that he "thought" Al was a sales representative for Strattan. There was no evidence that any authorized party from Strattan ever held DiLeo out as the company's agent.
3. Plaintiff had a "time of the essence" contract with Cartel Associates ("Cartel") to deliver the home to Cartel's site (plaintiff's exhibit E).
4. After DiLeo advised plaintiff that he could not deliver the home pursuant to their agreement, plaintiff contacted Strattan directly and eventually entered into a contract with Strattan (plaintiff's exhibit I).
5. In order to induce Strattan to enter the contract and start construction of the home so that plaintiff could meet his deadline with Cartel, plaintiff telefaxed ("faxed") Strattan a copy of a $6,615.60 check which purported to be a copy of a deposit check (defendant's exhibit 2).
6. The faxed copy of the check coupled with plaintiff's own testimony that he never intended to actually send the check constituted a deceptive trade practice in violation of Connecticut General Statutes 42-110(b).
7. Strattan delivered the home pursuant to the contract; however, there were defects in the home.
8. Strattan substantially performed the contract and is entitled to the contract price less the reasonable cost to complete its performance.
9. The court finds the following defects and breaches by Strattan: CT Page 10858
 a. The specifications attached to and made a part of the contract (plaintiff's exhibit I) called for gypsum (sheetrock) on the fire separation wall of the home. The cost allowance for plaintiff to do the work is $4,115.00 (plaintiff's exhibit K).
 b. Work with respect to the faulty tub trap and pipe (plaintiff's exhibit M). The court allows plaintiff $225.00.
 c. Bathroom switch (plaintiff's exhibit N). The court allows plaintiff $150.00.
 d. Carpet work as per plaintiff's exhibit P. The court allows plaintiff $200.00.
e. Slipped roof. The court allows plaintiff $1,500.00.
f. Shingles. The court allows plaintiff $100.00.
 g. Cathedral ceiling allowance (plaintiff's exhibit Q). The court allows plaintiff $480.00.
 h. Installation of plywood and linoleum in bathrooms. The court allows $200.00.
TOTAL ALLOWANCES $6,970.00
10. The following claimed defects were not proven.
 a. $960.00 claimed in plaintiff's exhibit L. Cellar stairs are excluded by contract and there was no evidence as to the cost to repair the hole in the kitchen ceiling or the other items in the exhibit.
 b. $150.00 is claimed in plaintiff's exhibit N for front door light. The contract excludes such items. Defendant's exhibit 1, policy manual, page six.
 c. Plumbing ductwork, plaintiff's exhibit O. Hot water and baseboard elements were called for in the contract not ductwork for a hot air system.
 d. Set crew and trailer deposit totalling $3,000.00 on plaintiff's exhibit Q will be discussed post. Other items not allowed on plaintiff's exhibit Q were not proven.
11. The contract price for the home was $78,497.02. CT Page 10859
12. Plaintiff paid Strattan $71,583.64.
13. No damage was proven as to the $2,000.00 carrier deposit, and it should be returned or credited to plaintiff.
14. The $1,000.00 set up allowance should stand as there was no evidence to show that no set up service was provided even though plaintiff did provide a crew to set the modular on the foundation.
15. Strattan has paid $710.00 to remedy defects in the home. Strattan's claim that plaintiff is entitled to nothing because the contract procedure for handling defects was not followed is unpersuasive. The uncontroverted evidence was that Strattan agreed that plaintiff could remedy the defects and bill Strattan, despite the contract language. The $710.00 payment buttresses plaintiff's claim that Strattan agreed to this procedure and should be estopped from claiming the contract provisions.
APPLICABLE LAW
Plaintiff admittedly did not forward the required deposit when he entered the contract with Strattan. This was indeed a breach of the contract which might have relieved Stratton of its obligation to perform. It is axiomatic that a material breach of contract by one party relieves the other party of the duty to perform. However, Stratton did perform, apparently not realizing, even at the time of delivery, that the $6,615.00 deposit had not been made. Defendant did substantially perform the contract; however, there were defects as found above which required plaintiff to spend $6,970.00 to remedy. Under the doctrine of substantial performance, defendant was entitled to the contract price less the reasonable cost to complete the performance. Commercial Discount Co. v. Town of Plainfield, 120 Conn. 274 (1935); Vincenzi v. Cerro, 186 Conn. 612,615-16 (1982).
The contract price was $78,497.02. The cost to complete was $6,970.00. Defendant has already paid $710.00 to remedy defects leaving a net outlay of $6,260.00 by plaintiff. Defendant was entitled to the contract price of $78,497.02 less $6,260.00 or $72,237.02. Plaintiff paid $71,583.64 on delivery of the home leaving a balance due under the contract of $653.38.
The analysis does not end here. The carrier deposit of $2,000.00 should be credited to plaintiff under the contract because there was no evidence of damage to the carrier which delivered the home. Allowing for that credit, plaintiff would be owed $1,346.64. Plaintiff is not entitled to this sum CT Page 10860 because of his actions regarding the deposit.
Defendant Strattan alleged in its counterclaim that plaintiff fraudulently induced defendant Strattan to construct and deliver the home. Plaintiff admitted that he sent a fax copy of the deposit check of $6,615.00 to Strattan with no intention of actually sending the check. Plaintiff desperately needed the home to meet his contractual deadline with Cartel, and he felt that he had already made a deposit with the DiLeo contract.
The Connecticut Unfair Trade Practices Act (CUTPA), section 42-110b, provides:
 (a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.
 (b) It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45 (a)(1)), as from time to time amended. (Rev'd. to 1991.)
Plaintiff's action was fraudulent and deceptive. Plaintiff's belief that his deposit with DiLeo was a deposit with Strattan flies in the face of evidence that Strattan never received any deposit. If plaintiff felt that DiLeo was Strattan's agent, he was mistaken, but that mistake does not remedy the violation. Even subjective food faith does not absolve one of a CUTPA violation. Francoline v. Katt, 26 Conn. App. 203
(1991). Finally, plaintiff knew DiLeo was not Strattan's agent when he fraudulently faxed the check.
The question now becomes one of remedy. By his own deceptive and fraudulent actions in violation of CUTPA, plaintiff has forfeited his right to the $1,346.64 he would have been entitled to under the contract. Connecticut General Statutes 42-110g
allows the court to ". . .provide such equitable relief as it deems necessary or proper." Allowing plaintiff to recover when he induced defendant's performance by fraud would not be equitable.
Defendant did not submit evidence of its attorney's fees. The court has reviewed the file, heard the three hour trial and reviewed post trial briefs. The services of which the court is CT Page 10861 aware are reasonably worth at least $3,500.00 and awards counsel fees in that amount.
The court renders judgment for the defendant on the complaint. On the counterclaim, the court enters judgment for the defendant to recover the sum of $3,500.00 plus costs.
E. EUGENE SPEAR, JUDGE