Plumb *v.* Milk.

[ERIE GENERAL TERM, November 13, 1854. *Marvin, Bowen* and *Greene,* Justices.]

---

### PLUMB *vs* MILK.

Where A., acting professedly for B., as his agent, makes a contract with C. for work and labor to be done by the latter, C. cannot recover in an action against A., without showing *prima facie* the want of authority in A. to bind B.

The *onus* lies upon the plaintiff to prove the want of authority in the person assuming to act as agent, rather than upon the latter to show the existence of the authority.

APPEAL from a judgment of the Cattaraugus county court, reversing the judgment of a justice's court. The action was upon an account for carding wool, and fulling and dressing cloth,

Plumb *v.* Milk.

It appeared from the evidence that the account commenced several years before the trial. The wool and cloth were generally taken to the shop or factory by the defendant; sometimes by his brothers. The defendant was asked at the shop to whom the wool belonged, and he said to his mother. And the charges for the wool carding, &c. were made to the defendant's mother, Alida Milk. In March, 1849, the defendant conceded that there was then due upon the amount about $10.50, and said it made no difference which assumed to pay it. The witness, an agent of the plaintiff, drew a note for the amount, and the defendant signed the note, with his mother's name, by himself as her agent. The note was received. After the note was given, a further account of about $4.00 was made, and it was charged, on the books, to the defendant. A short time before the trial, (April, 1853,) the plaintiff's agent wrote to the defendant concerning the accounts, and the defendant said he presumed it was all right, but it was for his mother to pay, and not for him to pay. During the time the account was accruing, the defendant stated at the shop, to an agent there of the plaintiff, that the account was in the name of his mother, and it might be continued so; that he lived with his mother, and it would make no difference whether it was charged to him or his mother; that he carried on his mother's farm, and lived with her. It was proved by a witness, under objection, that the defendant, in the summer of 1852, stated to the witness that he owned the farm and all the property; that his mother stayed there and did his work. The plaintiffs also proved, under objection, that the defendant in making accounts at stores directed that the account be charged to his mother, saying it would make no difference. To one he said it would make no difference; some things he got and some his mother got. The plaintiff offered to surrender the note taken in 1849, and left it with the justice. The justice gave judgment for the amount of both the accounts, &c.; damages $18.07. The county court reversed the judgment, and the plaintiff appealed to this court.

*Wm. Woodbury,* for the plaintiff.

*C. C. Torrance,* for the defendant.

*By the Court,* MARVIN, P. J.　There is no evidence tending to show that the defendant, when the account charged against his mother commenced, consented that it should be charged to him, or said any thing tending to make him liable for the carding or cloth dressing.　He stated that the wool belonged to his mother, and the account for the carding and cloth dressing was opened with her, and so continued until 1849, when it was settled by her note, executed in her name by him as her agent. The evidence then shows simply that the defendant took wool to the shop of the plaintiff to be carded and cloth to be dressed, and stated that they belonged to his mother ; the work was executed, and charges made against the mother of the defendant. Upon the trial no evidence was given, other than the declaration of the defendant, tending to show whether he was or was not the agent of his mother authorized to make her liable for the carding and cloth dressing.　The plaintiff's counsel insists that when any one who has *professedly* acted as an agent is sued, touching the contract so made, he is to be held liable, unless he shows in his defense that he was such agent, and had authority to bind his principal, thus giving a cause of action against his principal. In short, that the *onus* is upon him to show his agency and authority, and not upon the plaintiff to show that he acted without authority.　The counsel cited several cases.　*Mauri* v. *Heffernan* (13 *John.* 58) is not in point.　The reporter extracts from the case that " a party who would excuse himself from responsibility, on the ground that he acted as the agent of another, ought to show that he communicated to the other party his situation as agent, and that he acted in that capacity, so as to give a remedy over against his principal."　In *White* v. *Skinner,* (13 *John.* 307,) the action was *covenant* upon articles of agreement *inter partes.*　The names of the defendants and two other persons present were inserted in the agreement as one party, adding, " as directors of the Granville Cotton Manufactory."　It

Plumb *v.* Milk.

was executed "for the directors, Reuben Skinner," and a seal affixed. The defendant pleaded specially, and alleged a copartnership of the manufacturing company ; that he was president and a director and agent, and that he executed the agreement in his capacity of director and agent, &c. To this plea the plaintiffs demurred, and the court held that the demurrer was well taken. That the covenant was the covenant of the defendant, and not of the company. This was clearly so. There are numerous cases showing that when one inserts his name in the body of a sealed agreement as the party contracting, he is liable, though he add to his name agent, &c. The agreement must be so framed as to give a cause of action against the principal. Platt, J., in *White* v. *Skinner,* however, added that the defendant, to exonerate himself, was bound to aver and prove that he had authority to seal for his co-directors ; that if the covenant does not bind the directors, for whom the defendant represented himself as agent, then it is personally obligatory upon the defendant alone ; that it was incumbent on the defendant, not on the plaintiffs, to aver and prove the authorization, if any, by which the defendant contracted for other directors or for the company ; that whether he had such authority is a fact for which the defendant alone is responsible, and he has no right to call on the plaintiffs to prove either the negative or affirmative ; that the plea was bad because it contained no such averment, upon which the plaintiffs might take issue.

In *Randall* v. *Van Vechten and others,* (19 *John. R.* 60,) cited by the plaintiff's counsel, the question we are considering did not arise. The defendants were a committee of the city of Albany, and the court held that enough was shown on the trial to make the city liable. True, it was shown by the defendants, that the form of the contract was sufficient to make them liable ; but the principles of the contracts of *public agents* were applied to them, and they having shown that they acted for and in behalf of the city, were held not to be personally liable, though the form of the contract was sufficient to make them liable. Nothing can be extracted from this case applicable to the question we are considering. Judge Platt delivered the opinion,

and referring to *White* v. *Skinner*, (*supra*,) said that there " it was a point of *special pleading* ; and the defendant was liable because he merely styled himself agent, and did not aver that he had authority to make the contract as agent." In *Stone* v. *Wood*, (7 *Cow*. 453,) the action was covenant upon a charter party, signed and sealed by the defendant. The contract was *with the defendant* as agent of J. and R. R. It was held that the covenant was the covenant of the defendant. The question we are considering was not up. The court remark, that the agent, to excuse himself, should show a liability upon his principal, and refer to previous cases— *White* v. *Skinner* among others. That the agent is not excusable, unless the principal is liable, is not denied; and I concede that, unless the contract in form binds the principal, the agent is liable ; but the question is, when the contract in form is the contract of a person declared at the time by the assumed agent to be the principal, and the person to be bound, upon whom is the *onus* of showing the liability of the declared principal ; in other words, the authority or want of authority of the person avowing himself the agent? In *Rossiter* v. *Rossiter*, (8 *Wend*. 494,) the defendant executed a note in the name of his assumed principal. The authority was denied. The defendant acted under a written power of attorney, which he gave in evidence on the trial. The court held that the defendant was not authorized by the written power of attorney to execute the note in the name of his principal.

These cases do not decide the question presented in the present case. The books are full of cases showing the duties and liabilities of *agents*. An agent may make himself personally liable, by entering into the contract himself, personally. He is personally liable for contracts which he makes, without disclosing his agency. Story says, that when an agent executes a deed or other instrument, in the name of his principal, he is not personally bound. And that when he makes an oral or verbal contract as agent for another, and at the same time names his principal, he is not personally bound. (*Story on Agency*, § 263.) Here the *fact* of agency is *assumed*. In the next section he says, whenever a party undertakes to do an act, as

Plumb v. Milk.

agent of another, if he does not possess any authority from the principal therefor, or if he exceeds the authority delegated to him, he will be personally responsible therefor to the person with whom he is dealing, for or on account of his principal. Here the *want* or *exceeding* of authority is *assumed*, and we are not aided by these rules in determining the *onus probandi*. When the credit is given exclusively to the principal, the agent is not liable. (*Story on Agency*, § 263.) In the present case the contract in form was with Alida Milk; the defendant acting professedly for her, as her agent, under the contract with the plaintiff, to card the wool and dress the cloth for her, and the plaintiff gave exclusive credit to her. If the defendant in making this contract acted without authority from Alida Milk, he made himself liable to the plaintiff; otherwise, not. And, in my opinion, the plaintiff could not recover in an action against him, without showing, *prima facie*, the want of authority in the defendant to bind Alida Milk. I think, upon general principles, the *onus* was upon the plaintiff. The form of the contract made Alida Milk liable. A parol authority to the agent to make the contract was sufficient. If it was the contract of Alida Milk, the defendant was not liable. It was not the contract of the defendant unless he made it without authority from Alida Milk, and the plaintiff, to make him liable, must aver and prove this. (*See* 1 *Greenl. Ev.* § 78.) What was the contract of the defendant? He contracted that he had authority from Alida Milk to make a contract that should bind her to pay for carding the wool and dressing the cloth. He did not contract to pay, himself; but if he had no authority to bind Alida, the law says he shall pay. The plaintiff, then, to recover against him, must show a breach of his agreement, to wit, the want of authority. He might be made liable in fraud for the false representation of authority, knowing it to be false; and clearly, in such case, the plaintiff must show the falsity and *scienter*. But I do not put the question upon this ground.

Suppose the contract in this case should be stated in the complaint, with an averment of the want of authority, and the defendant should deny the allegation of the want of authority, and

neither party gave any evidence, which party would be entitled to the verdict? This question has been stated as a test by which to decide the *onus*. (*Best on Principles of Ev.* § 253.)

Again, suppose the action against the defendant, as in this case, upon the account for the work and labor, and the plaintiff proves the agreement made by the defendant, assuming to act as the agent of Alida, and then stops, can he recover? I think not. (*See Id.* §§ 253 *to* 257.) *Ex parte Hartop*, (12 *Ves.* 350,) is referred to by Story and other writers on agency. The chancellor says, when the agent names his principal, the principal is responsible, and not the agent. This does not reach the difficulty.

In *Wilson* v. *Barthorp*, (2 *Mees. & W.* 863,) the defendant had drawn a bill in the name of a firm, and the court held that he could not be made liable, without some proof that he had no authority to draw the bill, or that he had not acted *bona fide*. This case is in point.

In the present case, the evidence showed that the charges were made against Alida Milk, and that the defendant executed, in 1849, a note in her name, for the balance of the account. Up to this time the defendant's statements were, that the wool and cloth were his mother's; that he lived with her and carried on the farm. There was no evidence to negative the truth of these statements. But the plaintiff was permitted to prove, under objection, that in 1852 he said he owned the farm and all the property, and that his mother stayed with him and did his work. For what purpose was this evidence given? Was it to show fraud by the defendant? This might all be true in 1852, and not affect the truth of his representations prior to 1849. I think this evidence was improperly received.

I think the judgment of the justice was properly reversed, and that the judgment of the county court should be affirmed.

Judgment affirmed.

[Erie General Term, November 13, 1854. *Marvin, Bowen* and *Greene*, Justices.]