[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 119 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 120 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 121 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 122 
It was proved on the trial in this case that the defendant, on the trial of the former action against the sheriff, testified that he had no authority from the sheriff to execute in his name the note mentioned in the complaint, unless that authority was within his general powers as a deputy of the sheriff; and the counsel on both sides have assumed that he had, as deputy, no such authority. It seems also to have been assumed that the sheriff had no power to insure, in his official capacity, the goods attached, and that consequently the deputy could not insure them in his name. The question of power on the part of the deputy to execute the note in the name of the sheriff does not depend upon that position. If the deputy had power to insure in the name of the sheriff, he could not, in effecting such insurance, subject the sheriff to the hazards of that most unsafe of partnerships — a mutual insurance company. He may have had power to insure the sheriff's goods, without having power to make him the insurer of other people's goods. The latter power was attempted to be exercised when he made the note in question, and this was undoubtedly beyond his general authority.
The defendant, having executed the note in the name of Snow, without authority, would be held liable, according to several decisions in this State, as the maker of the note? *Page 123 
(Dusenbury v. Ellis, 3 John. Cases, 70; White v. Skinner,
13 John., 307; Feeter v. Heath, 11 Wend., 487; Rossiter v.Rossiter, 8 id., 494; Meech v. Smith, 7 id., 315; Palmer
v. Stephens, 1 Denio, 480; Plumb v. Milk, 19 Barb., 74.) The authority of these cases has been somewhat shaken by the remarks of the judges who delivered opinions in the case ofWalker v. The Bank of The State of New York (5 Seld., 582); and in England, as well as in several of the United States, the principle upon which they rest, if they are supposed to present the only ground of liability of the agent, has been substantially repudiated. (Collen v. Wright, 40 Eng. L. Eq., 182;Randell v. Trimen, 37 id., 275; Lewis v. Nicholson,
12 id., 430; Smout v. Ilbery, 10 M. W., 1; Polhill v.Walter, 3 B. Ad., 114; Jenkins v. Hutchinson, 13 Ad. 
Ellis, N.S., 744; Long v. Colburn, 11 Mass., 96; Ballou v.Talbot, 16 id., 461; Jefts v. York, 4 Cush., 371; S.C.,
10 id., 392; Abbey v. Chase, 6 id., 54; Stetson v.Patter, 2 Greenl., 359; Bank v. Flanders, 4 N.H., 239;Woodes v. Dennett, 9 id., 55; Johnson v. Smith,21 Conn., 627; Ogdon v. Raymond, 22 id., 379; Taylor v. Shelton,
30 id., 122; Hopkins v. Mehaffy, 11 S. R., 126; 2 Smith's Leading Cases, 222; Story on Agency, § 264, a, and note 1.)
If it were necessary, in disposing of the present case, to decide the question, whether, as a general principle, one entering into a contract in the name of another, without authority, is to be himself holden as a party to the contract, I should hesitate to affirm such a principle. By that rule courts would often make contracts for parties which neither intended nor would have consented to make. The contract, if binding upon one party, must be binding upon both; and where burdensome conditions precedent were to be performed by the party contracting with the assumed agent, before performance could be demanded of the other party; or where the agent should undertake to sell, lease or mortgage the property of the assumed principal, or where credit should be given, which the responsibility of the agent would not justify, great injustice might result from such a rule. In those cases, and I think in *Page 124 
all cases, where one, pretending to be an agent, has contracted as such without authority from the principal, the party contracted with, on learning the facts, must have the right to repudiate the contract, and to hold the assumed agent immediately responsible for damages, without waiting for the time when an action might be maintained on the contract itself; and the damages must be measured, not by the contract, but by the injury resulting from the agent's want of power. Whenever a person enters into a contract as agent for another, he warrants his own authority, unless very special circumstances, or express agreement, relieve him from that responsibility. (Smout v.Ilbery, 10 M. W., 9, 10; Polhill v. Walter, 3 B. Ad., 114; Jenkins v. Hutchinson, 13 Ad. Ellis, N.S., 744;Jefts v. York, 10 Cush., 395; 5 Seld., 585; Story on Agency, § 164.) An action upon such warranty must always be appropriate where personal liability attaches to an agent, in consequence of his contracting without authority. In such action the plaintiff would be relieved from the necessity of showing performance of conditions precedent, and from the delay which the terms of the contract might require, if the remedy were limited to an action on the contract; and if special damages should be incurred in consequence of the agent's failure to bind his principal, such as the costs of an unsuccessful action against the principal to enforce the contract, they might be recovered. If the act of the agent were fraudulent, an action for the deceit would lie, but it would be a concurrent remedy with an action on the warranty, and so I apprehend must be the action on the contract itself, if the cases which sustain such action are to be regarded as correctly decided. In Dusenbury v. Ellis (3 John. Cases, 70), the leading case in this State sustaining such an action, it does not appear what time the note executed by the assumed agent had to run at the time when it was given. Supposing it to have been given payable at a very distant day, was the holder, after discovering that Dusenbury had no authority from Sharpe (the assumed principal), to give it, bound to wait until the note became due, and then sue Dusenbury on the note as *Page 125 
his contract; or could he repudiate the contract and immediately sue Dusenbury on the warranty of authority, implied, or rather, as I think, expressed, in the execution of the note? There can be but one answer to this question, and that is in favor of the right to repudiate the principal contract, and to prosecute on the subordinate contract of warranty, whether the right to elect between that course, and an action on the principal contract, existed or not. Whether Ellis, as indorsee of the note, could have maintained an action on the warranty, which was made originally to Fish, the payee, may be doubtful, unless it appeared that the agent knew he was acting without authority, in which case, according to English decisions, he would be liable on the warranty to any one receiving the paper; the representation of his authority being in effect made to all to whom it might be offered in the course of circulation. (Polhill v. Walter, 3 B. Ad., 114.)
If the party receiving the note in the present case must be charged, as claimed by the defendant's counsel, with knowledge of the extent of defendant's ordinary powers as a deputy of the sheriff (which is very questionable), the want of special authority for this particular act was not communicated, and could not be known. The defendant, therefore, is not within the cases in which agents have been held excused from liability for acts beyond their authority, when they have acted in good faith and the facts affecting their authority were equally well known to both parties. (Smout v. Ilbery, 10 M. W., 11; Story on Agency, §§ 265, 265 a.)
The recovery seems to have proceeded, in the court below, upon the ground that this was an action upon the note. It is rather, I think, to be regarded as an action on the warranty. The complaint states all the facts in respect to the making of the note by the defendant in the name of Snow; that he executed it without authority, and that the company issued the policy upon no other consideration than the note and the advance premium, relying on the authority of the defendant to execute the note. It also sets forth the proceedings in an unsuccessful suit against Snow on the note, and *Page 126 
demands judgment for the costs of that suit, together with the full amount of the note; the assessments for losses being equal to that amount. On the facts stated, the law implies a warranty of authority to the defendant to execute the note for Snow, and it was unnecessary, under our present system of pleading, to allege that legal inference. (Eno v. Woodworth, 4 Comst., 249, 253.) In an action on the note as the contract of the defendant, a claim for the costs of a suit to enforce the note against Snow would be absurd. The amount of the note, less the assessment paid, was made the measure of damages, as if the action had been upon the note; but the allegations and proof showed that the share of the losses of the company, chargeable upon the note, during the time covered by the policy prior to its surrender, was equal to the amount of the note. That possibly might be regarded as a proper measure of damages upon the breach of warranty; but whether that be so or not, no question having been made before the jury as to the amount of the recovery, if the defendant was liable at all, none can be made now.
I think the sheriff had an insurable interest in the goods, and that the policy was valid. The sheriff, by the seizure on the attachment, acquired a special property in the goods, which would have enabled him to maintain an action, and to recover their full value against any one who should take them out of his custody. (2 Saund., 47, note 1; Story on Bailm., § 125; 2 Mass., 514; 3 Hill, 215.) Such special property gave him an insurable interest. It was his duty to keep the property safely until sold or released, and he was chargeable for its destruction by any cause against which he could protect it by ordinary care, if he was not subject to a more stringent rule of responsibility. (5 Hill, 588;21 N Y, 103.) Although he was under no obligation to insure, he could, if he chose, protect himself against this risk by insurance. "A bailee or depositary, being liable by law or by contract for certain risks whereby the subjects bailed or deposited may be damaged or lost, has an insurable interest in it in respect to such risks." (1 Phil. on Ins., 4th ed., p. 121, § 191.) "A man is interested *Page 127 
in a thing to whom advantage may arise, or prejudice happen,
from the circumstances that may attend it, * * and whom it importeth that its condition as to safety or other quality should continue." (2 New. Rep., 302; 1 Hall, 84, 102, 183.)
The policy having been obtained in the name of the sheriff, he had a right to ratify it at any time during the term of insurance (2 M. S., 485; Story on Agency, § 248); although doubtless by doing so he would have ratified the giving of the note by the defendant, and made himself liable upon it. The section of Story on Agency, above refered to, shows that the underwriters bear the risk in such cases until there is a disavowal by the principal. This risk formed a consideration for the undertaking of the defendant, sufficient to sustain the recovery, either upon the note or the warranty, and to the extent of that recovery, neither party having asked the court to submit the question of damages to the jury. The position of the defendant's counsel is doubtless correct, that if the sheriff was authorized to insure the goods, the deputy who seized them might insure them in his name, but this power, for the reasons given above, did not authorize the deputy to give the note in question.
It is unnecessary to determine whether the expenses of insurance would constitute a claim in favor of the sheriff against the parties, or either of them, against the property. If the attachment was issued under the provisions of chapter 5, part 2 of the Revised Statutes (2 R.S., p. 3), it would doubtless be competent for the officer by whom the attachment was issued to allow such claim (Laws of 1830, p. 400, § 56; 3 R.S., 3d ed., p. 925); but, without some special provision of statute on the subject, it is presumed that the claim of the sheriff for seizing and holding goods by virtue of attachments or executions, must be limited to the specific fees provided for the service of such process, without reference to the expenses to which he might be subjected in removing them to a place of reasonable security, if their position were hazardous, or in such care of them as the law requires from him (21 N.Y., 103); whether he should choose to remove them, or to bestow such care, or to protect *Page 128 
himself against the possible consequences of neglect, by insurance. (15 Wend., 44; 2 T.R., 148-158; 7 M. W., 413; 11 id., 620; 12 id., 31; 14 id., 802; Crocker on Sheriffs, §§ 1096, 1097, 1110, 1111; Sewell on Sheriffs, 252-480, 481.)
It was within the powers of the company to issue the policy to Snow, and to take security or receive the premium from the defendant, and to prosecute the defendant for any default in performing his engagements. The provision in the statute authorizing the corporation to maintain suits against members or stockholders (Laws of 1849, p. 448, § 16), which is supposed by the defendant's counsel to limit the right of action of such corporation to suits against members or stockholders, was not designed to restrict its power to maintain suits, but to remove a possible doubt as to its right to maintain suits at law against members and stockholders, arising from the quasi partnership character of such companies. By section 17, these corporations are clothed with all the powers of any corporation to maintain suits.
If the action were to be regarded as brought, and the recovery had, upon the note, it might be doubtful whether the judgment could be sustained, because the plaintiff has neither alleged nor proved enough to show to the court that the defendant was in default in paying the note, regarding it as his personal obligation. By the terms of the note, it was payable "at such time or times as the directors of said company may, agreeably to their act of incorporation, require." The act of incorporation here referred to is the charter of the company which the statute requires the original corporators to make and file in the office of the Secretary of State. (Laws of 1849, ch. 308, §§ 3, 10, 12, 16.) There does not seem to be anything in the statute under which the company was organized to which the reference could be held applicable. Neither the pleadings nor the proofs show what the provisions of the charter of the Union Insurance Company were, and consequently it does not appear whether the maker of the note was in default or not. The allegations in the complaint of notice of assessment by publication and by mail are put in issue by the answer; and if we *Page 129 
could assume that those allegations indicated correctly what was required by the character to charge the parties assessed, there is an entire want of proof on the subject. This objection is distinctly presented by the third ground of the defendant's motion for a nonsuit; and if the plaintiff was confined to a recovery on the note, I think this objection would be fatal to his action; but, regarding the liability as depending on the warranty, no assessment or notice was necessary.
Several objections were taken by the defendant to the introduction of testimony; but, with the exception of those relating to the action against Snow, they are so clearly untenable as not to require notice. If this action was to be regarded as an action simply to charge the defendant as the maker of the note, the record in the case of Snow would not have been admissible against the defendant. Assuming that it was incumbent upon the plaintiff to show that the defendant was not authorized to make the note for Snow (19 Barb., 74), this record, to which the defendant was a stranger, was not admissible to prove that fact, or as having any tendency to prove it, though it might have been otherwise if seasonable notice had been given to the defendant that his authority to make the note for Snow was denied in that suit, and requiring him to maintain his authority on the trial. (2 Cow. Hill's Notes, 817.) If the record was inadmissible, the parol evidence of the grounds on which the decision proceeded was equally so. Nor was the record necessary to authorize the introduction of proof of what the defendant testified to on that trial, showing his want of authority. What he said in the witness-box was admissible against him, as declarations made at any other time would be, without reference to his oath or to the issues in the record. But, resting the plaintiff's right of recovery, as I do, upon the warranty, the record was admissible to show that the plaintiff had been subjected to the expenses of an action in attempting to enforce the contract against the principal, whom the defendant undertook to bind. These expenses — the action being brought in good faith — were a legitimate item of damages in the present action (Randell v. Trimen, 37 L. E., 275; S.C., *Page 130 
86 Eng. C.L., 786; Collen v. Wright, 40 L. E., 182); and the parol evidence was admissible to rebut a possible inference that the nonsuit was granted on account of some formal defect in the prosecution of the action. It is always competent to show by parol the grounds on which a verdict or judgment was rendered, when the grounds become material, and do not appear in the record. (Wood v. Jackson, 8 Wend., 10-45; Doty v. Brown,
4 Comst., 71-75.) The judgment should be affirmed.
DENIO, Ch. J., DAVIES, WRIGHT and GOULD, Js., concurred.