WILLIAM H. ASPINWALL v. DANIEL TORRANCE, EDWARD M. HOPKINS, HENRY HOPKINS, ROBERT L. CUTTING, ABRAHAM B. BOYLES, CHARLES MORGAN, GEORGE L. SCHUYLER, GUSTAVUS A. LACCHI, EBENEZER G. BURLING and CHARLES GOULD, impleaded with ALBERT C. RAMSEY, and others.

(GENERAL TERM, FIRST DISTRICT, JANUARY, 1870.)

A stockholder, who has been compelled to pay the debt of his corporation, may have an action for contribution against the remaining stockholders who were originally liable with him for the same.

So held, where the stockholder had been charged under the provisions of the "Act for the incorporation of companies formed to navigate the ocean by steamships" (Laws of 1852, chap. 228, p. 302), which, in certain events, impose upon the stockholders a several liability for the corporate debts.

The equitable doctrine of contribution explained and enforced.

One who has induced an agent to go beyond his powers, and enter into a contract unauthorized by his principal, cannot hold such agent personally liable upon the contract. Per INGRAHAM, J.

It seems, an agent exceeding his authority, but acting in good faith, where the facts are known to both parties, is not personally liable upon a contract so made for his principal.

And it seems, where an agent pretends to act for his principal, in making a contract, knowing he has not authority therefor, he is not liable upon the contract, but upon a warranty of his agency.

T. as agent for V., had taken from R. a pledge of stock, to secure a note executed by the latter to V.; T. then agreed with R. to take the stock in payment of the note which he thereupon gave up to R., and there was no transfer of the stock, but T. retained the certificates; T. had, in the latter transaction, exceeded his authority and his principal repudiated the purchase.—Held, error to charge T. in an action against stockholders for contribution, as the equitable owner of said stock.

A defendant adjudged in an action against him to be the owner of stock, is not estopped by the judgment from denying his ownership in an action against him by another plaintiff.

And it seems a judgment from which an appeal is pending is not a final judgment by which the parties are prevented from disputing the facts adjudged therein.

APPEAL from a judgment entered on the report of a referee.

Plaintiff brought the action as a stockholder of "The Mexican Ocean Mail and Inland Company," on his own behalf, and

that of all other stockholders of such company, who might come in and contribute to the expense of the action, which was for a dissolution of the company, &c., and to compel contribution by the defendants, as the stockholders who were liable originally with him, toward the payment of certain judgments recovered against him by judgment creditors of the company. The defendant, Torrance, and several others answered, denying their liability, &c.

It appeared that "The Mexican Mail and Inland Company" was duly incorporated under "the act for the incorporation of companies formed to navigate the ocean by steamships," passed April 12th, 1852; the certificate of association being filed with the clerk of the county of New York January 8, 1853, and with the secretary of state January 25, 1853.

No certificate, stating the amount of the capital stock of the corporation, and that the same had been paid in, was filed in, the office of the clerk of the county of New York, nor was the capital paid in, in full; but the company commenced the business provided for in the articles of association, having its principal business office in the county of New York; and it contracted various debts and liabilities on which suits were afterward brought, judgments recovered and executions issued and returned *nulla bona.*

Suits were brought on these judgments (vide *Eaton* v. *Aspinwall*, 6 Duer., 176, aff'd. 19. N. Y., 119; *Abbott* v. *Aspinwall*, 26 Barb., 202) against the plaintiff, and judgments were recovered against him thereon, with costs; the plaintiff had paid these judgments, and also had incurred and paid expenses for legal services in defending the suits.

The referee made an allowance to the plaintiff for such costs as he deemed reasonable in each of the suits, and found that such of the defendants as were stockholders at the time the liabilities had been incurred, upon which the judgments against the company had been recovered, were liable in contribution; and that such of said stockholders as were solvent should further contribute to the payment proportion-

ably, of the amounts uncollectible from those who were insolvent.

He also charged the defendant, Torrance, with liability to contribute for certain shares of stock standing in the name of the defendant, Ramsey, on the company's books, under facts which appear in the opinion of the court. Separate appeals were brought by defendants, Ramsey and Torrance, but both appeals are disposed of in this opinion.

*John Sherwood,* for the appellants, Morgan, Cutting, Edward M. and Henry Hopkins, and Bayles.

*Charles A. Rapallo,* for the appellant, Torrance,

*William M. Evarts,* for the respondent.

Present—INGRAHAM, BARNARD and BRADY, JJ.

By the Court—INGRAHAM, P. J. The principal question submitted in this case is, whether a stockholder, who has been compelled to pay a debt due a corporation formed under this general law, can maintain an action against all the stockholders at the time of contracting the debt, for contribution, when the stockholders are only severally liable under the statute.

In *Young* v. *N. Y. and Liverpool U. S. Mail Steamship Co.* (15 Abbott, 69), an action was brought against the stockholders, praying for an account, and that judgment might be given that each stockholder pay the amount he should be found liable to pay, &c.; and the court, in General Term, held that the defendants were not jointly liable in that action. It is said in regard to this case, that it was an action by a creditor, and that his remedy is against individual stockholders.

The cases relied on as sustaining the plaintiff's right to contribution, are *Slee* v. *Bloom* and *Briggs* v. *Penniman,* in our own courts.

In *Slee* v. *Bloom* (19 John., 456), the stockholders were individually liable, and the action for contribution was held to be maintained, and contribution was decreed. In that case the plaintiff was a creditor, and the chancellor had dismissed the bill, holding that the plaintiff had no right to maintain the action.

The Court of Errors reversed the decree of the chancellor, holding the stockholders liable to the extent of their respective shares.

This decision was again affirmed. (20 J. R., 669.) In *Briggs* v. *Penniman* (8 Cowen, 387), the complainant was also a creditor. The stockholders were individually liable; and in that case, as in that of *Slee* v. *Bloom*, the court held them liable to pay the debt due the complainant. Neither of these cases were brought by a stockholder, against the other stockholders, to compel contribution.

In *Judson* v. *The Rossie Galena Co.* (9 Paige, 598), the chancellor says : " Those stockholders who are compelled to pay more than their rateable proportions of the debts, &c., will have a claim for contribution against other stockholders who are liable for the same debts." The liability in that case was joint and several.

In various other cases, this liability is said to be the same as that of partners. (*Allen* v. *Sewall*, 2 Wend, 327 ; *Moss* v. *Oakley*, 2 Hill, 269 ; *Bailey* v. *Bancker*, 3 Hill, 188.) In the latter case, BRONSON, J., says: " They should be left to such remedies as had been provided by law for the adjustment of partnership transactions. They may go into chancery for an account, and have the claims of all parties settled upon an equitable principle."

Several other cases were referred to on the argument, but all tending to the same points, and most of them to cases of joint liability, but none have been cited establishing the reverse of the proposition, viz. : That in cases of several liability, no contribution can be enforced.

The equitable doctrine of contribution rests upon the principle, that where all are equally liable for the payment of a debt, all are bound equally to contribute to that purpose. The cases above referred to all rest upon this principle, and although I entertain some doubt as to this rule when applied to persons severally liable, I am disposed to adopt the view of the referee, that, although the action for the claim must be against one alone, yet when that one has paid the whole debt,

he may claim that others equally liable with him shall bear a share of his loss. This was so stated by Denio, J., in *Garrison v. Howe* (17 N. Y., 458), where he says: "If a stockholder be sued to enforce his individual liability, he may himself resort to a suit for an account and for distribution."

My conclusion is, that the stockholders, who were such at the time of contracting this debt, are bound to contribute proportionally to the amount of their stock in payment of the plaintiff's claims.

In regard to the appeal of defendant Torrance, in this case, the referee has held Torrance liable to contribution on stock which belonged to Ramsey. In March, 1854, Torrance, as agent of Mr. Vanderbilt, loaned to Ramsey $3,000 on 750 shares of stock of the Mexican Ocean Mail and Inland Company, and took a certificate with blank power attached; afterward Ramsey applied to Torrance to have Vanderbilt take the stock and release Ramsey from his indebtedness, and added that Vanderbilt was willing. Torrance supposing the matter understood between them, agreed to the proposition, and the certificate remained in his possession, but the stock was never transferred on the books, and Torrance gave up the stock note.

Ramsey throughout knew that Torrance was acting as agent for Vanderbilt.

There is nothing in this transaction that warrants Ramsey in charging Torrance as purchaser. If anybody was liable to Ramsey, it was Vanderbilt and not Torrance. Ramsey had seen Vanderbilt and conversed with him, and the subsequent action of Torrance in surrendering the note of Ramsey and accepting the stock for Vanderbilt as a purchase, was the result of Ramsey's statement to Torrance, that he had seen Vanderbilt and that Vanderbilt would take up the loan and buy the stock, and that he had directed Ramsey to call on Torrance to arrange it. On this Torrance acted, saying Vanderbilt had told him about it, but he says he was induced to agree to it by Ramsey's statement.

I see nothing in this, which in an action between Ramsey

and Torrance, would make Torrance liable as the purchaser. There was no misrepresentation of any fact by Torrance. If there was any it was that of Ramsey, when he said Vanderbilt was willing to buy. There was no concealment by Torrance, and Ramsey knew all and more than Torrance as to the terms of the agreement with Vanderbilt.

There was no wrongful intention to act as agent. He was the agent, and he exceeded his powers only on the assumption of Ramsey, that he had conversed with Vanderbilt, and that he was willing to purchase.

I find nothing in the case of *White* v. *Madison* (26 N. Y., 117), that conflicts with these views. In that case, the agent had signed the note in the name of another without authority, and he was held liable on the presumed warrantee that he had such authority. There is a class of cases in which an agent is held excused from liability, where he had acted in good faith, and the facts were known to both parties. (Story on Agency, § 265, and cases there cited.) With how much more propriety may that rule be applied, when the agent is induced to act on his supposed agency, by the representation of the party with whom he is dealing.

It is very apparent from this case, that no deception or misrepresentation was intended or practiced. Both parties had conversed with Vanderbilt, and Ramsey had quite as much knowledge (as appears from his declaration), as Torrance had.

There is another reason why this rule cannot be applied to the present case. Vanderbilt held the stock as collateral to the loan of $3,000. That loan still remains unpaid, and the title to the stock is still in Vanderbilt. His title could not be divested without his consent, and there could be therefore, no sale by Ramsey to Torrance, for payment to be made in the note held by Vanderbilt, even if both of them had so contracted. I cannot see how there can be a sale by operation of law, which the parties could not make directly. The note still remains due to Vanderbilt; he is entitled to hold the stock as pledged to him as security for that loan

and until that debt be paid, the stock can be transferred to no other person by Ramsey. Torrance may be liable to Ramsey in damages, but with that we have nothing to do.

The referee found that Ramsey was discharged from liability to Vanderbilt, and ceased to have any interest in the stock after this transaction. In this finding, I think he erred for the reasons above stated.

The referee also finds, that Torrance is estopped from setting up this defence by reason of the judgment in favor of Rankin against Torrance, in which it was adjudged that Torrance was the owner of the said stock; and he also finds that Torrance has appealed from the said judgment, and that such appeal is undetermined.

That judgment was not between the same parties, and was not a final judgment. While the appeal was pending, it did not estop the defendant from denying his liability in the present action.

Whether, under the facts proven in this case, the defendant Torrance can be considered as the principal, and, therefore, the owner of the stock, may well be doubted. According to several decisions in the earlier cases, a party who, acting as agent, exceeded his authority, would be held liable as the principal. ( *White* v. *Skinner*, 13 John., 307 ; *Feeter* v. *Heath*, 11 Wend., 477 ; *Palmer* v. *Stephens*, 1 Denio, 480 ; *Plumb* v. *Milk*, 19 Barb., 74.)

In most of the cases the contract was in writing, and signed by the party sought to be charged, as agent for another ; but in all of them the true rule upon which the party is held to be liable is the warrantee as to his agency.

In later cases, this liability of the agent, as principal, has been denied. In *Walker* v. *The Bank of the State of New York* (5 Seld., 582), it was said that the rule was necessarily limited to written contracts, where the agent had subscribed his own name, as well as his principal's ; and the liability of the agent was made out by striking out the signature which was made without authority.

In *White* v. *Madison* (26 N. Y. Rep., 117), SELDEN, J., says he should hesitate to affirm the principle that one who enters into a contract in the name of another, without authority, is to be himself holden as a party to the contract; and he adds, that the appropriate remedy is an action for the deceit, or on the warrantee of agency.

In a later case of *Hegeman* v. *Johnson* (35 Barb., 200), the cases were again reviewed by EMOTT, J., and he adopted a new distinction between cases that were founded on an executed contract, and those that were merely executory, in which cases the agent could not be made liable on the contract personally.

In no case that I have been referred to has the agent been held liable as the principal, where the extent of agency was as well known to the one party as the other, or when the agent was induced to enter into the contract on the suggestion of his agency by the party with whom he contracted.

The judgment against Torrance should be reversed. All concurring.

Ordered accordingly.