Williams, J.
The circuit court, it appears from the record, reversed the judgment of the court of common pleas, because of alleged errors in overruling the demurrers to the amended petition, and refusing the instructions which the defendants requested to be given to the jury. It sufficiently appears from the petition, that in 1878, the defendants attempted to form, under the laws of this state, a corporation called “ The Wool Growers’ Exchange,” for the purpose, as declared in the articles of incorporation, of dealing in “ wool, merchandise, produce, and furnishing supplies to wool growers and others, on commission, and purchase or sale, and to do a general commission business in the articles above enumerated; and, also for the purpose of disseminating, through bureaus *537 or journals, useful knowledge and information pertaining to the improvement and protection of wool growing interests.” The amount of the capital stock was fixed at fifty thousand dollars, in shares of ten dollars each. When less than three thousand dollars of stock had been subscribed, and less than two thousand dollars paid in, an election was held by the defendants and others, at which the defendants were chosen as directors of the concern. These directors organized, by selecting from their number, the customary officers of a corporation. Thereafter, in 1882, while the defendants against whom the judgment in the case was rendered, were acting as such directors, controlling and managing the business of “The Wool Growers’ Exchange,” wool was purchased in its name, from the plaintiff, to the amount averred in the petition; and the balance of $3,195 of the purchase-price, for which, with interest, the plaintiff recovered judgment, remains unpaid. The defendants had knowledge that ten per cent, of the stock of the corporation had not been, and never was subscribed or paid in, but the plaintiff was ignorant of that fact. There is no allegation in the petition that the defendants were actuated by any fraudulent purpose, or had any design to cheat or defraud the plaintiff. Without such purpose or design, it is claimed, that the defendants could not be made liable, and therefore the lack of such averment is a fatal defect in the petition. Whether it be so, or not, is the question raised by the demurrers. The instructions refused, present a question somewhat different in form, though much of the same nature, which is, whether a personal liability was incurred by the defendants, if, in the transaction with the plaintiff, they acted in good faith, believing that the requisite amount of stock to authorize the organization of the corporation had been subscribed.
Upon both questions, the circuit court held with the defendants, and if its holding upon either was correct, its judgment must be affirmed.
A somewhat extended examination has satisfied us, however, that upon neither, is the decision in harmony with the great weight of authority. The courts of this country, and *538 of England, with few exceptions, adhere to the doctrine so clearly laid down by Mr. Justice Story in his commentaries on the Law of agency, where it is said: “ wherever a party undertakes to do any act, as the agent of another, if he does not possess any authority from the principal therefor, or if he exceeds the authority delegated to him, he will be personally responsible therefor to the person with whom he is dealing for or on account of his principal. There can be no doubt, that this is, and ought to be, the rule of law in the case of a fraudulent representation made by the agent, that he has due authority to act for the principal; for it is an intentional deceit. The same rule may justly apply, where the agent has no such authority, and he knows it, and he nevertheless undertakes to act for the principal, although he intends no fraud. But another case may be put, which may seem to admit of more doubt; and that is, where the party undertakes to act, as an agent, for the principal, Iona fide, believing that he has due authority; but, in point of fact, he has no authority, and, therefore, he acts under an innocent mistake. In this last case, however, the agent is held by law to be equally as responsible, as he is in the two former cases, although he is guilty of no intentional fraud or moral turpitude. This whole doctrine proceeds upon a plain principle of justice; for- every person, so acting for another, by a natural, if not by a necessary, implication, holds himself out, as having competent authority to do the act; and he thereby draws the other party into a reciprocal engagement.....If he has no such authority, and acts Iona fide, still he does a wrong to the other party; and if that wrong produces an injury to the latter, owing to his confidence in the truth of an express or implied assertion of authority by the agent, it is perfectly just, that he who makes such an assertion, should be personally responsible for the consequences, rather than that the injury should be borne by the other party, who has been misled by it. Indeed, it is a plain principle of equity, as well as of law, that where one of two innocent persons must suffer a loss, he ought to bear it, who has been the sole means of producing it, by inducing the other to place a false confidence in his acts, and *539 to repose upon the truth of his statements.” Story on Agency, section 264. In the note to this section, many cases which sustain the text are cited. And in the notes to Thompson v. Davenport, in Smith’s Leading Cases, vol. 2, pt. 1, commencing on page 408 of the eighth edition, a number of cases on the same subject are collected. In addition to those, others might be referred to, among them the following: Walker v. The Bank of the State of New York, 9 N. Y. 582; White v. Madison, 26 N. Y. 117; Weave v. Gore, 44 N. H. 196.
In the last case cited above, it is held, that “ although no fraud or wrongful motive can be imputed to the agent, still his act is an affirmation that he has authority to make the contract, and he may justly be held responsible for the truth of it; and it is no more than reasonable that he should suffer the consequences of his mistake, rather than the party who is misled by it, because, before holding himself out as such agent, it is his duty to ascertain whether his claim so to act is well founded or not; and he surely cannot be heard complain that others have confided in his assertion of authority, and upon the strength of it have entered into reciprocal engagements with him. Even if wholly innocent of any wrongful purpose, his case falls within the familiar principle, that when one of two innocent persons must suffer a loss, it ought to be borne by him who has been the means of causing it, by inducing the other to confide in the truth of his representations.”
While, however, the authorities generally agree that a person, who, without having in fact authority to make a contract as agent, yet does so under the bona fide belief that such authority is vested in him, is nevertheless personally reponsible to those who "contract with him in ignorance of his want of authority, a diversity of opinion is found in the cases in regard to the exact nature of the liability, and the character of the action by which it may be enforced. In Jenkins v. Hutcheson, 13 Ad. & E. 746, it is intimated by Eble, J., that an action of deceit would lie in such cases, notwithstanding the good faith of the agent, and some authorities may be found to that effect. Another class of cases hold that the liability *540 is upon the contract; but, it is believed that whether the agent is so liable, depends upon the intention of the parties as discovered from the contract itself; and on this question, the form of the agreement, and the mode of signature maybe quite conclusive. The rule, on this subject, as stated in Story on Agency, is, that an agent cannot be sued on the very instrument itself, as a contracting party; unless there be apt words to charge him. Section 264a. Still another class of eases establish the rule, which we are inclined to adopt, that in cases like the one we are considering, the agent is liable upon his implied promise that he possesses the authority he assumes to have. Smith’s Leading Cases, vol. 2, pt. 1, 408, (eighth ed.,) and. cases there cited. Lewis v. Nicholson, 88 Eng. C. L. 512.
In White v. Madison, supra, in learned opinion it is held, that the liability of the agent in such cases, rests upon the ground that he warrants his authority, and not that the contract is to be deemed his own.,
Bartholomew v. Bently, 15 Ohio 659, is referred to, as establishing, both that the liability of the agent in cases of this kind,is founded on fraud, and, that the petition should charge a fraudulent intent in direct terms. That was an action in case, for deceit, under the practice which prevailed before the adoption of the code of civil procedure. The questions arising upon the demurrer,related to the form of the remedy, and the sufficiency of the declaration in such an action. They are stated by Bie.char.3d, J., to be: “ First — Can a special action on the case for fraud, which has resulted in damage of the plaintiffs, be maintained in a ease like this, upon sufficient declaration ? Second — Is this declaration good upon demurrer ? ” The court answers the first question in the affirmative, and in speaking of the declaration says: “ The objection taken by counsel is a want of certainty. The action is founded on a fraudulent combination, and for holding out false colors at the commencement of the banking operations, and at various subsequent periods. The only direct charge of a fraudulent intention is in the withdrawal of the funds, and this, for aught that *541 appears, may have been long since the bills in plaintiff’s hands were issued.....It is thought that the averment of a fraudulent design should have been made in positive terms, as to each specific act relied upon to sustain the action.” Under the practice then in force, pleadings were subject to demurrer, unless they were appropriate in their form and allegations to the particular action pursued; and we do not understand it to be there decided, that no other action, could be maintained on the facts of that case. A different action was maintained in Medill v. Collier, 16 Ohio St. 599, which, so far as the grounds upon which the liability of the bank directors was placed, is not greatly dissimilar to the case before us.
Under our present system of pleading, it is not important what was formerly the most appropriate remedy. Upon the facts stated in the petition, the law, we think, implied a promise on the part of the defendants, that in making the contract with the plaintiff, they had authority to bind the corporation they assumed to represent; and if they had not, they are answerable for the consequences. That they were without such authority seems clear. It was held by this court in Bartholomew v. Bently, 1 Ohio St. 37, that while mere irregularities in organizing a corporation would not subject the officers to private liability, to protect them from such liability, the provisions of the act of incorporation must be substantially pursued. By our statutes, under which the proceedings were taken for the formation of the corporation referred to in the petition, the corporate powers, business, and property of corporations formed for profit, must be exercised, conducted, and controlled by a board of directors, all of whom must be stockholders; the articles of association must state the amount of the capital stock, and the number of shares into which it is divided; and at least ten per cent, of that amount must be subscribed, before directors can be chosen. So that, the subscription of the necessary amount of the capital stock to authorize the election of directors, is not only a matter of substance, but is essential to the organization of the corporation, and necessary to the transaction *542 of business by it. It is the security which the law requires shall be provided, before the corporation enters upon its business, for the protection of those who may deal with it. The statutory liability of the stock subscribers, is an additional security. In the effort to form the corporation in question, neither of these securities was provided. Counsel contend, that it is, nevertheless, a corporation de facto, and estopped to deny its liability to the plaintiff. If it were, it is not readily perceived how this would aid the defendants. Until there were stock subscriptions to an amount warranting the organization, the subscribers could not be compelled to pay beyond the sum required at the time of the subscription; nor would the statutory liability attach, unlessn there were some ground of estoppel, not appearing in this case. The implied undertaking of the defendants, was, that they represented a corporation with the capital stock required by law; while the one to which they insist the plaintiff shall be compelled to resort, was, if a de facto corporation, so only in name, without substance or capacity ; and if the doctrine of estoppel could be brought to the aid of the plaintiff against it, the defendants are not in a position to require a resort to that remedy, to relieve them from the liability they have incurred.
The case appears to have proceeded in the trial court, upon the theory, that if the defendants were liable at all, the amount which the plaintiff was entitled to recover, was the balance due on the contract. This was not necessarily the measure of recovery. As we have already seen, the action in such cases is not founded on the contract made for the supposed principal, but on the implied promise of the agent that he had authority to bind the principal; and the damages which may be recovered for its breach, is the loss sustained by the plaintiff by reason of his not having the valid contract which the agent undertook that he should have. The damages may sometimes exceed the amount due on the contract made in the name of the principal, for it is held,they may include the costs and expenses of an unsuccessful action against the principal to enforce the contract. White v. Madison, supra ; *543 Simons v. Patchett, 7 E. & B. 568; Collen v. Wright, Id. 301; 2 Smith’s Leading Cases, 410.
In Morawetz on Corporations, it is said, that the measure of damages, in an action against the directors or officers of a corporation, who induce a person to deal with it, before the capital indicated in its charter has in fact been provided, is the loss sustained “by reason of the difference between the capital which he actually received, and that which he was entitled to expect.” Under this rule, we think, the plaintiff might properly recover the balance remaining unpaid on the purchase-price of the wool sold. Prima facie, that is the amount of the plaintiff’s loss, and it does not exceed the amount of the capital which the corporation was required by law to have before it could be represented by directors, and which the defendants, by assuming to act for it, undertook that it did have. It is true the petition alleges that the corporation is insolvent, with an indebtedness exceeding ten per cent, of the capital stock; but whether the claims of other creditors stand upon a like footing with that of the plaintiff, or can, or will be enforced against the defendants, does not appear. Besides, if the proper stock subscriptions had been obtained, the corporation might not have become insolvent; or before it did, the plaintiff’s claim might have been paid or secured. If, in such case, the plaintiff could recover no more than a sum equal to the proportion of the capital which should have been provided, that his claim bears to the whole indebtedness contracted in the corporate name, it would be. necessary to take an account of the assets and liabilities, to determine the amount of the recovery. That rule applied to this case, would require that the defendants be charged with an amount equal to the necessary stock subscriptions, and the statutory liability of the subscribers, and that all the creditors be brought in to have their claims adjusted, before the amount of the verdict could be arrived at. The plaintiff has not sought to compel the defendants to provide a fund for the payment of other creditors who are not themselves asserting their claims, nor have the defendants complained because *544 they were not compelled to do so.' Whether the defendants could, in the trial court, if they had deemed it to their advantage, have had the claims of all the creditors adjusted, the aggregate liabilities ascertained, and the total amount the defendants could be called upon to pay, determined, and apportioned among the creditors, we need not decide. They did not make that claim in the court below, nor do they make it here.
In our opinion, the court of common pleas committed no error in overruling the demurrers to the petition,-nor in refusing the instructions requested by the defendants.

The judgment of the circuit court is reversed and that of the court of common pleas affirmed.