(116 App. Div. 744)

## FULTON v. SEWALL et al.

(Supreme Court, Appellate Division, Second Department. January 11, 1907.)

PRINCIPAL AND AGENT—LIABILITIES AS TO THIRD PERSONS—ACTION—INSTRUCTIONS.

Where it appeared that defendants agreed to pay plaintiff a certain sum for inducing Italian workmen to emigrate to the Hawaiian Islands, and it appeared that defendants were acting as agents for a sugar planters' association composed of individuals residing in the Hawaiian Islands, and that such agency was known to plaintiff, an instruction that persons, though contracting only as agents, are generally liable where there is no responsible principal to resort to, and that, if the jury believed that the sugar planters' association was not legally competent to make a contract or liable to be sued and defendants knew such fact and plaintiff did not, defendants would be liable as principals, was erroneous; there being no question of an agent contracting for a sham principal, and the fact that the association was not incorporated not rendering the agents liable.

Appeal from Trial Term, Kings County.

Action by Andrew J. Fulton against Oscar T. Sewall and others. Appeal by defendant Sewall from a judgment in favor of plaintiff and from an order denying a motion for a new trial. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER, MILLER, and GAYNOR, JJ.

I. R. Oeland, for appellant.
William G. Cooke, for respondent.

MILLER, J. The defendant Sewall appeals from a judgment entered on the verdict of a jury and from an order denying a motion for a new trial in an action brought to recover damages for the breach of a contract, whereby it is claimed the defendants agreed to pay the plaintiff the sum of $2 for each Italian workman whom he should induce to emigrate to the Hawaiian Islands.

It appeared that the defendants were engaged in a general shipping and commission business, and were the representatives in this country of the Hawaiian Sugar Planters' Association, an unincorporated association, composed of the sugar planters of the Hawaiian Islands, who

were attempting to obtain laborers for their plantations. The plaintiff was first employed in connection with the enterprise by another agent of said association to accompany as surgeon to San Francisco a body of Porto Rican emigrants. Thereafter he met the defendants and was employed at a salary of $300 per month and expenses to aid in encouraging Italians employed on the sugar plantations of Louisiana and Porto Ricans to emigrate to Hawaii. In October, 1901, the contract in suit was made, by which, instead of a monthly salary, the plaintiff was to receive the per capita compensation stated, supra. The plaintiff's efforts under the latter employment began in December, 1901. After at least one expedition that had been arranged for had failed for want of emigrants, another was scheduled to start January 21, 1902, and arrangements were made by the defendants to transport from San Francisco at least 150. However, the plaintiff only succeeded in reaching there with six workmen, and he was then informed that it was decided to discontinue the movement. In his complaint the plaintiff alleges that on January 21, 1902, he had induced more than 3,000 workmen to emigrate, and he now claims that, instead of giving him a reasonable time to perform his contract, the defendants stopped him just at the point of success. He accounts for the disparity between his present claim and his performance up to that time by the fact that the grinding season on the sugar plantations in the south had not yet ended; but in a letter written by him on the 21st of January, 1902, he accounts for the failure of the expedition scheduled to start on that day by the fact that the wages which he was authorized to offer was not sufficient to induce the men to emigrate, and in letters previously written he had stated that on account of the difficulties under which he labored he had been obliged, in order to insure the success of the expeditions advertised for January 21 and February 3, 1902, to offer the leaders of the men and the boarding house keepers where they boarded fees ranging from $1 to $5 for each man whom they should induce to join the expedition. But the jury have said that the plaintiff has suffered $7,000 damages by not being permitted to continue his efforts.

It is not claimed that the plaintiff did anything after the failure of January 21, 1902. He testified that prior to that time he had visited the different Italian settlements on the plantations and learned the number of men from each who were willing to go to Hawaii. He claims he obtained this knowledge in the following manner, viz.: The interpreter who accompanied him read to the men in Italian from the proposed agreement pursuant to which they were asked to emigrate. The men then talked with their leaders and with each other in Italian. If the leader could speak English, he then told the plaintiff the number of men who had reported to him a willingness to go, and, if he could not speak English, he talked with the interpreter in Italian, who, in turn, interpreted to the plaintiff what he claimed the leader said. It did not appear what communications were made to the plaintiff through the medium of an interpreter and what ones directly by the leaders. The plaintiff could not understand Italian. This evidence was objected to as hearsay, and after it was all received the Trial Court made

a ruling striking out the testimony respecting all statements communicated through the medium of an interpreter. The interpreters were not called as witnesses. As the plaintiff had only testified to the general course pursued at each plantation, it is impossible for us to tell even with the record before us what information he obtained through the medium of an interpreter as distinguished from what was communicated to him by the leaders in English, even assuming that such latter testimony was competent. In this state of the record, however, the case went to the jury.

The plaintiff claimed that the contract of October, 1901, was made with the defendants as principals, whereas the defendants, not disputing the making of the contract, claimed that to the knowledge of the plaintiff it was made by the defendants as agents for the said Hawaiian Sugar Planters' Association. The correspondence between the plaintiff and said association, extending over the period of the plaintiff's employment upon a salary, tends strongly to prove that the plaintiff fully understood that said association was the principal. The court charged at the request of the plaintiff's counsel as follows:

"That persons, though contracting only as agents, are generally liable where there is no responsible principal to resort to. * * * That if the jury believe that the Hawaiian Sugar Planters' Association was not legally competent to make a contract or liable to be sued, and that the defendants knew that fact and the plaintiff did not, then the defendants here would be liable as principals."

The exception to this charge presents reversible error. While it may be true that the charge in the abstract was correct, it had no application to the case at bar, and could have served no other purpose than to mislead the jury and possibly cause them to base their verdict upon an issue that was not in the case. There was no question in this case of an agent contracting for a sham principal. It was undisputed that the Hawaiian Sugar Planters' Asssociation actually existed and was composed of individuals capable of contracting and of being sued. The mere fact that they resided in the Hawaiian Islands did not prevent their being bona fide principals, nor did the fact that they were organized as an association. It may be that in an action against the members of the association the plaintiff would have to prove more than is disclosed by the record in this case respecting the purposes of the association and the authority of its officers and agents to bind its members, but it does appear that the defendants were acting for a real principal, and that, when the contract in suit was made, the plaintiff had been informed by a letter from said principal that the defendants were authorized to represent it. There was no allegation in the complaint, and no proof offered on the trial, even suggesting that the plaintiff sought to hold the defendants as principals on the theory that they had assumed to act for a sham principal, or for one who did not have capacity to contract; on the contrary, the plaintiff's whole effort was to show that he dealt with the defendants as principals. It is undoubtedly the law that a person dealing in the name of a sham principal is liable as a principal, and that a person acting as agent, when he has, in fact, no authority so to act, is personally liable on the contract made. The ground upon which this liability depends is said

by Judge Selden, in White v. Madison, 26 N. Y. 117, to be that the agent warrants his authority, and this ground of liability is said by Judge Andrews, in Baltzen v. Nicolay, 53 N. Y. 467, to be accepted by the later and better-considered opinion.

The respondent contends that, as said association was not incorporated, the agent contracting in its behalf was personally liable; but this cannot be the law, and the cases cited do not sustain the proposition. The decision in Bartholomae v. Kaufman, 16 Wkly. Dig. 127, turned upon the point that the defendant had contracted in the name of a sham principal, and the case of Bentley v. Merriam, 16 Wkly. Dig. 59, seems to have been decided upon the theory that, in order to defeat personal liability, the defendants had to show that they were authorized to act for a principal capable of contracting. If this was the point decided, we do not think that case should be followed as an authority. If a plaintiff seeks to hold a person contracting nominally as an agent upon his implied warranty of authority, it must be that the burden is on him to establish every element of his cause of action, and that, until a case is made by the plaintiff, the defendant does not have to disprove it by showing his authority; and, if the plaintiff seeks to hold one who has contracted nominally as an agent upon the theory that the principal was a sham, the burden of proving the fact is upon the one alleging it. This proposition was squarely decided by the case of Plumb v. Milk, 19 Barb. 74. That case was decided upon the authority of Wilson v. Barthrop, 2 Mees. & W. 863, and is assumed by Judge Selden, in White v. Madison, supra, at page 129 of 26 N. Y., to have correctly stated the law. In the case at bar not only was there no attempt to prove that the principal for whom the defendant acted did not have legal capacity to contract or to be sued, but the plaintiff sought to recover on the theory that he dealt with the defendants as principals. Under these circumstances the injection of this issue into the case by the charge quoted was error, and may have contributed to produce the verdict complained of.

This conclusion renders it unnecessary to consider the other points discussed by the appellant.

The judgment and order should be reversed, and a new trial granted, with costs to abide the event. All concur.