CASPER GESTRING, Respondent, v. SYLVESTER J.
FISHER *et al.*, Appellants.

St. Louis Court of Appeals, November 10, 1891.

| 46 | 603 |
| 58 | 494 |

| 46 | 603 |
| 134m | 63 |

| 46 | 603 |
| 81 | 456 |

1. Principal and Agent: LIABILITY OF AGENT ACTING WITHOUT
   AUTHORITY. An agent who undertakes to bind his principal, when
   in fact he has no power to do so, is responsible to the other con-
   tracting party for the damages occasioned by the non-performance
   of the contract; and this is so whether he acts in good faith or
   not.

2. ——: ——: AGENCY FOR THE SALE OF REALTY. This rule
   applies to an agent for the sale of realty who has no authority in
   writing to sell the realty, and whose principal refuses to execute a
   contract of sale made by him. But, in the absence of an express
   agreement to the contrary, such agent merely undertakes to bind
   the interest of his principal in the realty, without warranty of
   title.

3. ——: ——: ——: MEASURE OF DAMAGES. The mere fact
   that such agent has undertaken to sell realty in the name of his
   principal, without legal authority to bind such principal, does not
   render him responsible for any defect in the title of the principal.
   In the absence of evidence of other damages, the measure of the
   agent's liability to the purchaser in such case is the excess of the
   market value of the principal's title, whether good or bad, over
   the contract price.

4. Principal and Agent: ADMISSIBILITY OF DIRECTIONS FROM THE
   PRINCIPAL TO THE AGENT AS EVIDENCE OF THE LATTER'S AUTHORITY.
   In an action wherein a principal is sought to be held upon a con-
   tract made for him by an agent, his instructions to the agent are
   always admissible as evidence of the extent of the agent's actual
   authority, if the extent of that authority is an issue in the case;
   and, therefore, a disputed claim of estoppel will not render such
   evidence inadmissible.

*Appeal from the St. Louis City Circuit Court.*—HON.
JACOB KLEIN, Judge.

REVERSED AND REMANDED.

*Lee & Ellis* and *Montague Lyon,* for appellants.

(1) An agent is required by general law to have authority in writing in order to bind his principal to a contract for the sale of the principal's lands, and, therefore, it is the duty of persons dealing with the agent to ascertain whether or not such authority exists, in the absence of any fraudulent representation by the agent that such written instrument exists, and that the requisite authority is conferred by it. R. S. 1889, sec. 5186; Mechem on Agency, sec. 273, p. 176 ; sec. 289, p. 190 ; sec. 291, p. 191, and cases cited. (2) The testimony of Mr. Fisher, one of the appellants, concerning his instructions to Mr. Meany, their salesman, as to the restrictions placed upon them in the sale of the property in question, should have been admitted, and the court below erred in excluding it. *Baker v. Railroad,* 91 Mo. 152 ; *Brownfield v. Ins. Co.,* 26 Mo. App. 390. (3) The court below should have given to the jury the instruction asked by the appellants on the question of their ignorance of the signing of the receipt by Mr. Meany, and their subsequent repudiation of said receipt read in evidence by the respondent. *Richardson v. Palmer,* 36 Mo. App. 88; *Lingenfelter v. Ins. Co.,* 19 Mo. App. 252; Wood's Law of Master & Servant, sec. 273. (4) The respondent was not entitled to recover more than the $25 which he deposited as earnest money with Mr. Meany, and which the appellants tendered back to the respondent immediately upon their repudiation of the receipt read in evidence. There was no representation by Mr. Meany or the appellants, or either of them, that they had the requisite authority to make the sale, or that J. C. Birge was the owner of the property, and the respondent made no inquiry of Mr. Meany, or the appellants, as to who the owner of the property was. The whole transaction was based upon a mutual mistake made by Mr. Meany and Mr. John Gestring, acting for his father, the respondent. The

appellants did not, therefore, bind themselves personally in this transaction. According to the receipt, if the title was not perfect there was to be no sale. *Michael v. Jones*, 84 Mo. 578; *Richardson v. Palmer*, 36 Mo. App. 88 ; *McCurdy v. Rogers*, 21 Wis. 197 ; *Ogden v. Raymond*, 22 Conn. 379 ; Story on Agency [ 9 Ed.] sec. 265, p. 317.

*Rassieur & Schnurmacher*, for respondent.

(1) Where one undertakes to enter into a contract for another, as his agent, and has no authority for so doing, he will become personally bound for the performance of the contract. Story on Agency, sec. 264 ; Am. & Eng. Ency. Law, " Agency," p. 401 ; *Wright v. Baldwin*, 51 Mo. 269. (2) Defendants had no authority to enter into the contract here in question. Under the statute such authority would necessarily have had to be in writing, and they had no writing. R. S. 1889, sec. 5186. Independent of the statute, the evidence shows that they had no authority to sell the property in question, except in connection with other property. (3) The law which requires that an agent's authority to sell lands must be in writing is intended for the protection of the owner, and cannot be invoked by an agent who has acted without such authority. *Gerhart v. Peck*, 42 Mo. App. 644. Plaintiff had a right to assume as against defendants, but not as against the owner, that defendants were acting with authority. (4) The private instructions of a principal to his agent or clerk, clothed with apparent general authority, are inadmissible against strangers dealing with such agent. The secret directions of defendants to their real-estate salesman, Meany, whose duty, as shown by defendant's own evidence, was to do precisely what he did in this case, were properly excluded. *Jackson v. Ins. Co.*, 27 Mo. App. 62 ; *Brownfield v. Ins. Co.*, 26 Mo. App. 390; *Kinealy v. Burd*, 9 Mo. App. 359. (5) The measure

of damages was properly laid down in the instruction given for plaintiff. Defendants, having no authority to act for the owner, became bound personally for the sale of this land to plaintiff, and became responsible for the payment of the same damages as if they, owning the land, had agreed to convey the same. They put it out of their power to comply with their legal obligation by managing a sale the very next day to one Campbell. What the damages in such a case are has been fully settled by the case of *Hartzell v. Crumb*, 90 Mo. 629, affirming the case of *Kilpatrick v. Downing*, 58 Mo. 32.

ROMBAUER, P. J.—The plaintiff's petition seeks to recover from the defendants $2,700, the alleged difference between the real value of certain real estate, and the price at which the defendants sold it to him. The cause of action is, that defendants, as agents of one J. C. Birge, undertook to sell said real estate to plaintiff, claiming authority to sell it for him at a stated price, while in fact they had no such authority from anyone ; and it rests on the familiar principle that, where one undertakes to enter into a contract as agent for another, and has no authority for so doing, he will be personally bound for the damages resulting from the non-performance of the contract. Upon the trial of the cause before a jury, the plaintiff recovered a verdict for $425, which was fully warranted by the evidence as to amount, if the view of the law taken by the court was correct. The defendants, appealing, assign for error that the evidence adduced warranted no recovery beyond $25 ; that the court excluded legal evidence offered by the defendants, and that it misdirected the jury as to the law.

The plaintiff gave evidence tending to show the following mentioned facts : The defendants were real-estate agents in the city of St. Louis, and, as such, published a monthly real-estate price current, stating that no property was advertised therein, unless the exclusive agency for its sale was given to them. Among

the items advertised in this price current was the following: "Hempstead street, north side, one hundred feet east of Broadway, thirty-eight by one hundred and twenty-five, block 250 north, price $30 (per foot)." The plaintiff saw this item, and sent his son to the defendants' office to buy the property. The son met there one Meany, who was one of the sale clerks of the defendants, and he paid $25 earnest money for the purchase of this lot to Meany, who thereupon executed and delivered to him the following memorandum:

"Office of Fisher & Co., \
S. J. FISHER, CLEVES S. FISHER, }
Real Estate, No. 714, Chestnut St. )

"ST. LOUIS, April 29, 1890.

"Received of C. Gestring $25, as earnest money and in part payment of the purchase of lot on Hempstead street, north side, one hundred feet east of Broadway, being lot thirty-eight by one hundred and twenty-five in city block 250 north, of St. Louis, Missouri, sold to C. Gestring for the sum of $1,140, or $30 per foot, terms of sale as follows: Cash. Title to be perfect, or no sale. If the title is not perfect, earnest money to be refunded and examiner's fees paid by us. Taxes of 1890 to be paid by purchaser.

"[Signed]                        J. C. BIRGE,
"FISHER & Co.
"Agents."

"I agree to the above.
"[Signed]                        C. GESTRING."

The plaintiff also gave evidence that Meany, the clerk, before delivering the receipt, told one of the defendants that he had sold this property to the plaintiff, and that said defendant thereupon remarked that he was glad that the plaintiff got it, because, on the first of the month, the owner was going to put it up $10. There was no evidence that either of the defendants saw this receipt before it was delivered to the plaintiff's son, nor was there any evidence that plaintiff's son inquired

any further into the authority of the defendants to sell this property at $30 per front foot, except as hereinabove stated. It was conceded by the evidence that the plaintiff was ready to consummate the purchase by payment of the residue of the purchase money, and that a formal tender was waived.

The following additional fact bearing upon the case also appeared in plaintiff's evidence, namely, that J. C. Birge had no title to the property when the memorandum of sale was made, but that the title thereto was in Mary C. Birge, his wife, and that the defendants, more than ten days after the execution of the memorandum, and when threatened with litigation, wrote a letter to plaintiff containing the following statements:

"As we wrote your attorney, Mr. Rassieur, we regret that we are unable to carry out the agreement which was made with you to sell you lot on Hempstead street. This is the first time, since we located in business in this city, that such a thing has happened; but, as you were informed of this fact on the day subsequent to this transaction, we cannot see how it is possible that you can be damaged, either directly or indirectly, and, as you must surely know that it was not our purpose to treat you in this way, we cannot see what will be gained by litigation." * * *

The plaintiff also gave evidence that the market value of the lot in question was at least $400 in excess of the price stated in the memorandum.

The defendants gave evidence showing that they had no written authority, either from J. C. Birge or his wife, the true owner, but had oral authority to sell this lot for $30 per front foot, provided this and another higher priced lot were sold together, and not otherwise. Meany, the defendant's sale clerk, testified that, prior to the execution and delivery of the memorandum, he stated this fact to the plaintiff's son, to whom the receipt was delivered, adding that, as the firm had no

authority to sell this lot separately, the sale was sub-
ject to the owner's approval, but that he would use his
best efforts to obtain such approval. He also testified
that the memorandum of sale was copied in the letter
press copy book of the defendants' before it was deliv-
ered. The senior member of the defendant's firm,
being examined on the defendants' behalf, was asked
successively the following questions: "What instruc-
tions, if any, did you give Mr. Meany in regard to the
sale of this piece of property in controversy, the Hemp-
stead property?" "Has Mr. Meany ever made a sale
of property for Fisher & Co., without instructions from
you or your son, a member of the firm?" These ques-
tions were excluded by the court upon the plaintiff's
objection, and the defendants excepted and still except.
The witness, however, did testify, in answer to other
questions, that Meany was employed by him, together
with others, to make sales ; that he gave them all the
same instructions ; that everybody entering the office to
buy property was met by his agents or salesmen at the
door, and the salesmen tried to make sales to such per-
son ; that, if they succeeded in agreeing upon the price
and terms, the agent or sub-agent, or clerk in the wit-
ness' office, stepped back and saw whether there was
any authority in writing in the office to sell the prop-
erty, and, if there was no such authority in writing,
conditional sales were made, to be approved by the
owner afterwards, but that, if the authority was found
to be there, an unconditional sale was made without
being subject to any approval whatever; that, where
the authority was not in writing, the same was made
subject to the owner's approval in all cases, unless the
witness himself otherwise ordered.

The defendants asked the court to instruct the jury
as follows: "The court instructs the jury that, under
the pleadings and the evidence in this case, the plain-
tiff is not entitled to recover beyond the sum of $25."

"The court instructs the jury that, if they believe from the evidence that the defendants were ignorant of the fact, that one Joseph P. Meany had signed the name of J. C. Birge, Fisher & Co., agents, to the receipt read in evidence, and dated April 29, 1890, at the time said receipt was so signed and delivered by the said Meany to John Gestring, and that the defendants, as soon as they learned the contents of the said receipt, refused to recognize said receipt; and, within a reasonable time thereafter, notified plaintiff of that fact, then, there was no ratification of said receipt by the defendants, and the jury should find their verdict for the defendants."

The court refused so to instruct, but instructed the jury as follows: "The court instructs the jury that, if they find from the evidence that witness Meany was in the employ of the defendants as a salesman of real estate on April 29, 1890, and that a part of his duty, as such salesman, was to receive earnest money on sales, and to execute and deliver contracts in writing of such sales, in the name of the firm of defendants; and, if the jury further find that, on said day, said Meany did execute, sign and deliver the receipt read in evidence, and that at said time defendants had no written authority from the owner of the real estate therein described to sell the same, and that defendants, within a reasonable time after said date, failed and refused to procure and deliver to plaintiff a deed for said real estate, and that plaintiff, or his agent, offered to comply with the terms of said sale, and demanded a deed, then the jury will find a verdict for the plaintiff, unless you believe and find from the evidence that at, or prior to, the time when said receipt of April 29, 1890, read in evidence, was delivered by said Meany to said John Gestring, he, the said Gestring, knew or was informed that said Meany had no authority to make or execute the said receipt, or knew or was informed that said Fisher & Co. had no written authority to make a sale of said

property, or knew or was informed that said sale, evidenced by said receipt, was made subject to the approval of the owner of the property, or unless you believe from the evidence that said receipt was received by said John Gestring with the understanding at the time that Meany, or Fisher & Co., would endeavor to obtain the approval of the owner to such sale, and that they were not able to do so, after reasonable efforts, as explained in the instructions given you, and marked numbers 4, 5, 6 and 7."

"Unless you find and believe from the evidence that the instructions spoken of by the witnesses, Fisher and Meany, in regard to the sale of the property mentioned in the writing, dated April 29, 1890, read in evidence, were known or communicated to John Gestring at or before the delivery of said writing by. Meany to said Gestring, they cannot affect the rights of the plaintiff in this case, and, in that event, the testimony in relation thereto should be wholly disregarded by you in arriving at a verdict in this case."

"If the jury find for the plaintiff, they will assess his damages at such sum, if any, as the jury may find from the evidence the reasonable market value of the premises described in the petition, in the first week of May, 1890, was greater than the price fixed by the memorandum of sale, together with the amount paid by plaintiff as earnest money to the defendants."

We have set out the record thus fully, because it raises some propositions which are seemingly novel. That an agent who undertakes to bind a principal, when, in fact, he has no power to do so, thereby renders himself individually responsible, is an elementary proposition, and it makes no difference whether in so doing the agent acts in good faith or otherwise. In *Smout v. Ilbury*, 10 M. & W. 1, it is stated that one of the cases rendering an agent thus responsible is, where, not having in fact authority to make the contract as agent, he yet does so under the belief in good faith that such

authority is vested in him, and that view is approved in *Wright v. Baldwin*, 51 Mo. 269. But a contract of a real-estate agent in selling property intrusted to him for that purpose is peculiar. In absence of an express agreement to the contrary, he does not undertake to bind all claimants of the title, nor that he will sell an unincumbered fee-simple title, but only that he will sell such title as his principal has. Whether the sale is finally consummated depends, generally, upon the further question whether his principal has a perfect title, or, if not, whether the vendee is satisfied with an imperfect title. The agent, by his agreement to negotiate a sale, assumes no obligation in reference to the title, unless it was made a part of his duty to have the title examined before attempting to affect a sale (*Gerhart v. Peck*, 42 Mo. App. 651), or unless he warrants the title to the vendee.

Now, in the case at bar, the petition charges, that the defendants pretended to have authority *from one J. C. Birge*, under which they agreed in his name to sell to plaintiff a lot of land *belonging to said Birge;* that they had no such authority ; that the plaintiff tendered to Birge the purchase money, and demanded of him a conveyance of the lot, which Birge refused to make, etc. The proof offered is in support of the pleadings. The plaintiff claims under the memorandum, which he asserts must be taken as evidence of the sale which the defendants agreed to make to him of the title of J. C. Birge. The memorandum purports to bind J. C. Birge as principal, and no one else. The statement, "title to be perfect or no sale," relates to the title bargained for. That condition, it is true, is inserted for the benefit of the vendee, and he may waive it, and the vendee claims that he has waived it by insisting on a deed from J. C. Birge, so that giving his evidence the greatest effect, we are ready to concede that he has shown a cause of action. But a different question arises when it comes to the measure of his damages.

The theory of damages is compensation, and the plain-tiff's own evidence shows, that, if he had got all he unconditionally bargained for, namely, J. C. Birge's title to the lot, he would have got less in value than what he agreed to pay for it, because that evidence shows that the title to the lot was in Mary C. Birge, and not in J. C. Birge, and a husband has no more power to convey his wife's title to lands than a stranger.　　The uncontradicted evidence shows that the $25, which plaintiff had deposited as earnest money with the defendants, was tendered to him at once upon a failure of the sale, although the tender was not kept up by deposit in court.　As the plaintiff has shown no other substantial damages, which he could recover on any compensatory theory, we must conclude that the court erred in not instructing the jury, as requested by the defendants, that the recovery was limited to that sum, and also erred by giving the instruction on the measure of damages, requested by the plaintiff.

In view of the recurrence of other questions which arise upon this record, we deem it proper to make the following additional observations.　The plaintiff was justified in assuming from the prospectus published by the defendants, and from their acts in trying to sell this lot to him, that they had legal authority from some one to sell it.　If this were a question between the plaintiff and the owner, the law would be different.　We also add, what we had recent occasion to say in another case, that instructions from the principal to the agent are always admissible in evidence, and hence there was no valid objection to the admission of the oral instruc-tions given by Fisher to Meany, although the ruling out of that evidence in view of the subsequent testimony of Fisher which was admitted, could hardly be deemed to be prejudicial error.　Where the agent receives instruc-tions, they always form the limit of his authority between himself and his principal.　Where the agent is held out to the world as possessing greater authority,

the principal is estopped from relying on undisclosed instructions, as against persons who relied on the agent's apparent authority, but, as such holding out is a question of fact for the jury, we cannot see on what principle the court can rule out instructions from the principal to the agent, simply because the jury are justified in finding that such instructions are opposed to the apparent authority of the agent.

All the judges concurring, the judgment is reversed, and the cause remanded.