ANDREW EMMERT, Appellee, v. JELSMA & HOLDEBRAND et al., Appellants.

**DAMAGES:** Measure—Wrongful Assumption of Agency. Damages recoverable from one who assumes to enter into a contract in the name of another for the sale of land, with knowledge that he possesses no authority so to act, do not embrace ''the difference between the contract price and the market value of the land,'' but are limited to the *value of the consideration* parted with by the injured party. It necessarily follows that the measure of damages could not be greater, in case the unauthorized party entered into the contract without fraud on his part.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

MAY 3, 1921.

ACTION for damages by a purported purchaser of real estate against alleged agents who assumed to act as such, and as such to sell the land to the plaintiff; whereas, in fact, they lacked authority to make such sale. The same cause of action is set forth in the second count, with the additional allegation that the representations of the agents were made fraudulently, in that they knew that they were false when they made them. There was a trial to a jury and a verdict for the plaintiff and judgment entered thereon. The defendants appeal.—*Reversed and remanded.*

*Tesdell & Mackaman* and *Stipp, Perry, Bannister & Starzinger,* for appellants.

*Roy E. Cubbage* and *Campbell & Campbell,* for appellee.

EVANS, C. J.—The transactions involved herein were had in July, 1917. The defendant L. H. Battles was a real estate agent at Mitchellville. The defendants Jelsma & Holdebrand were engaged as a partnership in the same business at the town of Pella. The plaintiff was a proposed purchaser of land. He applied to the Pella agents, Jelsma & Holdebrand, who showed him several farms which were not satisfactory. He made special inquiry from them concerning a certain farm known in this record as the "Fox farm," and comprising 166 acres of land, and was advised by them that they knew the man who had the agency. The person thus referred to by them was the defendant L. H. Battles. They and the plaintiff went together to the home of Battles, pursuant to this conversation, but failed to find him on that date. They did find the brother of Battles, who aided them in a showing of the farm. This was on July 25, 1917. Fox, the owner of the land, was in California. In one conversation, some months prior, Fox had stated his price to Battles as $250 per acre net. Some time later, he confirmed the conversation by one or more letters. For the purpose of this case, we may fairly assume that Battles had an agency for the sale of the land, within a limited scope: that is to say, he could fairly be deemed to have had authority to produce to Fox a purchaser for the farm at the price named, and thereby to earn

a reasonable commission. Jelsma & Holdebrand had a more or less indefinite understanding with Battles, said to be the common and usual understanding between real estate men, that, if the former should produce to the latter a customer for any land listed with him, there should be an equal division between the agencies of the commission earned. In this sense, the three defendants were jointly interested in accomplishing a sale of the "Fox land" to the plaintiff. Battles had no agreement with Fox as to the amount or rate of commission. The price named to him by Fox being the *net* price to Fox, Battles implied a right to add something to such net price, which would be available to him as the commission. The price quoted to the plaintiff on July 25th by the defendants Jelsma & Holdebrand, and perhaps by the brother of Battles, was $275. The plaintiff offered $265. The negotiations proceeded no further on such date, it being the declared purpose of the defendants Jelsma & Holdebrand to cause Battles to wire to Fox the offer of $265. Battles, being later advised of the negotiation, at once wired Fox that he had a purchaser at $250 per acre net. He received immediately a reply wire from Fox, to the effect that the offer came too late, and that he had given an option on the property. Jelsma & Holdebrand had also wired Fox on their own responsibility, offering to purchase the farm for $40,000 net. To this offer Fox wired his refusal, with the further statement that the farm was not *now* on the market. The three defendants met the plaintiff on Saturday, July 28th, at a bank at Kellogg. Because of the telegraphic information that the farm was optioned, they seem to have conceived the idea that, if they could show a sale to the plaintiff prior in point of time to any knowledge on their part of the option, such sale would take priority over the option. To this end they prepared a formal written contract of sale, whereby "Fox, by L. H. Battles, his agent," purported to sell the farm to the plaintiff for a consideration of $265 per acre. This contract was executed in the bank at Kellogg, on Saturday, July 28th, both by Battles on behalf of Fox, and by the plaintiff. It did not, however, bear the exact date of its execution. On the contrary, it was antedated, and purported to have been executed on July 26, 1917. It is the testimony of the defendants that the claim of alleged option by Fox was disclosed to the plaintiff, as

well as the purpose of antedating the written contract.  This is the contract that is referred to in the record both as Exhibit A and as Exhibit 9.  It will be seen from the foregoing that this contract, Exhibit A, might have been fraudulent as to Fox and not fraudulent as to the plaintiff.  For the time being, both the plaintiff and the defendants had a common interest in enforcing the contract against Fox for their own respective benefits.  The defendants would thereby earn a liberal commission, whereas the plaintiff would acquire for $265 per acre a farm said by his witnesses to have been worth at that time $300 per acre.

As already stated, the plaintiff pleaded his cause of action in two counts.  Count 1 claimed to recover upon a mere implied warranty of authority as agent to sell.  Count 2 was predicated upon fraud and false representations.  The trial court submitted to the jury each count of the petition, and instructed that each was sufficient, as a cause of action, if its allegations were proven.  It is manifestly true that, if Count 1 was sufficient as a cause of action, Count 2 would necessarily be so.

The principal question presented for our consideration on this appeal is that of the measure of damages.  This question was covered by the trial court in one instruction, being No. 13, as follows:

"If you find from the evidence that the plaintiff is entitled to recover on either or both counts of his petition, the amount of his recovery will be the difference, if any, between the price named of the land in Exhibit No. 9, and the reasonable market value thereof, on March 1, 1918, with interest thereon to the date of your verdict, together with interest on the sum of $1,965 at the rate of 6 per cent per annum from March 1, 1918, to the 1st day of December, 1918."

A down payment was made by plaintiff to defendants of $1,965.  This money was returned by the defendants to the plaintiff on December 1, 1918, without interest.

It will be seen from the foregoing instruction that the court fixed the measure of substantial damage as the difference between the contract price agreed on and the market value of the land on March 1, 1918.  This measure of damage was apparently adopted by the trial court, and is defended here on the theory that such would have been the measure of damage of the plaintiff

against the vendor, if the contract entered into had been valid as against him, and had been thereafter breached by him.

Assuming, therefore, that the defendants did exceed their authority in assuming to enter into the purported contract as agents for the vendor, and that they were, therefore, liable for the damages resulting to the plaintiff, were they liable for that measure of damage so stated in the instruction?

It is elementary that an agent who purports to enter into a contract for a disclosed principal is not himself liable *on the contract* unless the terms of the contract itself provide for such liability. *Doolittle v. Murray & Co.*, 134 Iowa 536; *Willett v. Young*, 82 Iowa 292. On the other hand, it is likewise elementary that the mere fact of an existing agency will not protect a wrongdoer from the natural consequences of his own wrongdoing. If one, by fraudulent representations, deceive another to his injury, he is liable in damages for such resulting injury, regardless of any question of agency for a third party. We will assume, also, for the purpose of this case that, if a purported agent falsely represent the scope of his authority and exceed his authority and thereby induce another to act in reliance upon his assumed authority to his injury, the purported agent is liable for damages naturally and proximately resulting therefrom to the injured party.

What, then, is the measure of damage available to plaintiff, upon the record before us? Can the instruction above quoted be sustained by analogy, upon the assumption that the measure stated would have been the measure of the liability of the vendor for the breach of a valid contract or for fraudulent representations whereby plaintiff was induced to enter into a contract? This question is separable into two parts:

(1)   Is the assumption itself correct?

(2)   If yea, is the analogy controlling?

It will be noted that the instruction under consideration made no distinction, as between the two counts of the petition. It applied the same measure of damage to each or both counts. Suppose that the contract had been valid, and that the vendor were sued by plaintiff for breach thereof, what would be the rule of measure of damages as against him, in the absence of fraud or bad faith? The first count herein charges no fraud or bad

faith. It discloses that the defendants were wholly unable to perform or to procure a performance of the contract entered into. In such a case, the measure of damage as against a vendor would require him to compensate the injured party by returning to him all benefits received, and paying to him his reasonable expenses incurred. That is to say, he would be required to put the vendee substantially *in statu quo*. The vendor is not liable, in such a case, for the profits of the contract nor for the rise of values. The same rule applies upon a breach of covenant of warranty of title in a warranty deed. *Sietsema v. Anderson*, 188 Iowa 651; *Eggert v. Pratt*, 126 Iowa 727; *Cornell v. Rodabaugh*, 117 Iowa 287; *White v. Harvey*, 175 Iowa 213; *Boice v. Coffcen*, 158 Iowa 705; *Royer v. Foster*, 62 Iowa 321; *Mischke v. Baughn*, 52 Iowa 528. So far, therefore, as the first count in the petition is concerned, the suggested analogy lends no support to the instruction given by the trial court.

In the second count of the petition, fraud and scienter are charged. There is room for the contention that the measure of damages set forth in the instruction could be enforced against a vendor of real estate who (1) had, by fraudulent representations, induced the plaintiff to enter into a contract of purchase; or (2) had, in bad faith and without legal cause, refused performance of a valid contract.

We shall not dwell upon such proposition or upon its limitations, but will assume its correctness, for the purpose of this discussion. Does it follow that the same reasons exist, in substance, for applying the same rule of measure of damage to the case presented by plaintiff under the second count of his petition? In the hypothetical case against a vendor who has induced a contract by fraudulent representations, the existence of a valid contract has been accomplished by the mutual acts of the parties. The injured party has bound himself to the contract, and is bound to perform its undertakings on his part, regardless of whether he seeks redress in damages against the vendor or not.· His injury consists in the fact that he has been brought under the burdens of the contract. Though he may repudiate and avoid the contract, if fraudulently obtained, yet he must *confirm* it before he can be heard to claim damages. Having confirmed it, he is forever bound by it, and is thereafter

confined to the redress of damages. The rule of measure of damages in such case aims to give to him the measure of the represented consideration which induced him to assume the obligations of the contract. The contract thus entered into is, therefore, a natural element in the computation of damages. If the case be one where the vendor, in bad faith and without legal cause, refuses performance of a valid contract, we still have a case where the existence of a contract has been accomplished. The rights of the vendee in the subject-matter of the contract have vested. The property is equitably *his*. And this is so, even though the value of the property be greater than the promised consideration. Here again, the contract enters in as a natural element in the computation of the vendee's damages.

In the case presented by the record before us, the existence of a contract was not .accomplished. The purported contract, entered into in the name of Fox as vendor, was void as to Fox. It was no less void as to the plaintiff. The plaintiff never came under the burden of any legal obligation under such contract. Though he were induced to sign the same by fraudulent representations of agency, yet he was bound to nothing by such signing. No right to the land ever vested in him. When Fox re-·fused to recognize the authority of the defendants, and refused to convey the land, he neither defeated nor took away from plaintiff any vested right; nor did he leave the plaintiff under the burden of any contractual obligation. There was no breach of contract, either by Fox or by the assumed agents; none by Fox, because he had not authorized the contract; and none by the defendants, because the contract imposed no contractual obligation upon them. Their liability arises, not upon the contract, but out of their own wrongdoing in falsely inducing the plaintiff to a change of position to his injury. The damages as against them, if any, are to be measured by such resulting injury. They are not measured by the contract, because there was no contract. The signing of the purported contract by the plaintiff worked no injury to him. It cast no burden .upon him. He was as free from its obligations after the signing as he was before. The terms of the contract, therefore, are not an element which enter into the measure of his damage. On the other hand, if, by reason of false representations as to authority, the plain-

tiff was led into a change of position to his injury; if, in reliance thereon, the plaintiff parted with property, or paid to the defendants any part of the purported consideration, such facts would be a disclosure of injury to the plaintiff, and would enter into his measure of damage. For the consideration thus paid by plaintiff, the defendants would be liable, not because the plaintiff, by the contract, *promised* to pay the consideration, but because he *did pay* the same, in reliance upon the false representations of the defendants.

It necessarily follows that the supposed profits, which never accrued, of a contract which never existed, cannot be deemed the measure of plaintiff's damages. The precise point here considered does not appear to have been passed upon by us hitherto. In reaching our conclusion, we are not unmindful of the variety of expression to be found in the books as to the liability of an agent, where he fails to bind his principal. It has been said broadly, in some of the cases, that, where an agent contracts in the name of his principal, and fails to bind his principal because he acts in excess of his authority, he is himself bound. Such is the broad proposition upon which appellee relies. An examination of the cases where such proposition is thus broadly laid down quite generally discloses that, in its application to the facts of the particular record, the scope of such proposition is greatly narrowed. In our own cases, we have held definitely that the liability of an agent in such a case is not upon the contract, but is for damages for his wrongdoing. *Groeltz v. Armstrong*, 125 Iowa 39.

In *Andrews & Co. v. Tedford*, 37 Iowa 314, relied on by appellee, there was a failure of the purported agents to bind their principal, for want of authority so to do. Pursuant to their representation of authority, they did receive from the plaintiff the property which was the subject-matter of the contract. They were held liable to pay for such property. This would be an appropriate measure of damage, and is not inconsistent with our present holding, though the distinction between the *value* of the consideration received and the *contract price* therefor was not stressed or made in the case. In *Groeltz v. Armstrong*, 125 Iowa 39, the purported agent failed to bind his principal, for want of authority. Relying upon his representa-

tions of authority, the plaintiff rendered services, and was permitted to recover from the agent the value of the services so rendered.

In *Lewis v. Tilton*, 64 Iowa 220, the defendants purported, as agents, to represent a purported principal, which principal was, in fact, nonexistent. Relying upon their representation of authority, a gas company, plaintiff's assignor, furnished to the defendants for their purported principal a quantity of gas for lighting purposes. The defendants, as purported agents, were held liable to the plaintiff.

In *Thilmany v. Iowa Paper Bag Co.*, 108 Iowa 333, a purported agent of the principal failed to bind his principal, not for want of authority as agent, but for want of authority in the principal itself, a banking corporation, to enter into the contract at all. It was held that the agent was not liable. Though it is true that, in some of our cases here cited, the ground of liability of the agent has not been specified in the opinion, the fact remains that in none of them has the agent been held to a liability beyond the value of the consideration parted with by the injured party, in reliance upon the representations of agency. The rule which we here follow has abundant support in other jurisdictions and in the text books. *Wallace v. Bentley*, 77 Cal. 19 (18 Pac. 788); *Hall v. Crandall*, 29 Cal. 567 (89 Am. Dec. 64); *Senter v. Monroe*, 77 Cal. 347 (19 Pac. 580); *Gestring v. Fisher*, 46 Mo. App. 603; *White v. Madison*, 26 N. Y. 117; 2 Corpus Juris 806, 807; Story on Agency (9th Ed.), Section 264.

Upon the record before us, no legitimate measure of damage is disclosed, except the item of interest upon $1,965 for the time the same was retained by the defendants.

If plaintiff, as appellee, elects to take judgment for such item, the judgment below will be affirmed, with such modification. Otherwise, the judgment will be reversed and remanded, with direction to the lower court to proceed consistently herewith.—*Affirmed on condition.*

WEAVER, PRESTON, and DE GRAFF, JJ., concur.